FRED HAISLIP *et al.* v. LOUDEN H. WHITE *et al.*

(No. 9380)

Submitted September 2, 1942. Decided September 22, 1942.

*Lee, Blessing & Steed,* for appellants.
*R. Paul Holland,* for appellees.

Fox, PRESIDENT:

On the 2nd day of May, 1942, petitioners filed in the Circuit Court of Logan County charges against the respondents, praying that they, and each of them, be removed from the office of member of the Board of Education of said county for misconduct in office in the particulars set out in their petition. The petition contains specific charges against the respondents individually, and against them jointly, of and concerning their conduct as members of the board of education of said county. These charges may be summarized as follows:

As to Louden H. White. (1) That he was guilty of official misconduct in that he entered into a fraudulent agreement with R. L. Shelton and C. L. Williams, by which he promised and agreed that he would thereafter, as a member of said board, vote with said Shelton and Williams on all matters presented to the board, regardless of the matter in controversy, and that in consideration thereof, received the definite assurance and promise of said Shelton and Williams that his wife, Madora White, would be employed by the Board; and that in pursuance of said fraudulent promise and agreement, she was so employed, and received compensation therefor; (2) that on the 11th day of October, 1941, said Louden H. White voted affirmatively in favor of a motion to employ his said wife, and that she was so employed and received compensation; that he so voted with knowledge that his said wife was not qualified for the position for which she was selected, and, with such knowledge, did not remove or attempt to remove her therefrom; (3) by the employment of his wife as aforesaid on the 11th day of October, 1941, he be-

came directly and indirectly pecuniarily interested in the proceeds of her contract of employment; (4) that he voted in favor of the employment of the wife of R. L. Shelton, then a member of said board of education with knowledge that such employment was unlawful.

As to the respondent, R. L. Shelton, it is averred (1) that he entered into a fraudulent agreement with Louden H. White and C. L. Williams, by virtue of which he promised to join the said Williams and White in voting for the employment of Madora White, the wife of said Louden H. White, and in consideration thereof exacted from said White a promise to vote, from that time on as such school board member, with said Shelton and Williams on any and all controversial matters presented to the board, and in pursuance of this agreement voted to employ Madora White, who was so employed by the vote of said Shelton, Louden H. White and C. L. Williams, from which said employment, the said Madora White received compensation to the extent of at least $450.00; (2) that knowing the said Madora White to be incompetent to hold the position for which she was selected, and being in position to do so, he failed to remove or attempt to remove her therefrom; (3) that he voted in favor of the employment of his wife for a position with the said board of education, and that she was so employed and received compensation therefor to the extent of $54.16; (4) that in voting for the employment of his wife and securing her employment, he became directly or indirectly pecuniarily interested in the proceeds of her contract of employment; and that in voting for the employment of Madora White, he did so with the knowledge that Louden H. White, a member of the board, had a direct pecuniary interest therein.

As to C. L. Williams, it is alleged (1) that he was guilty of official misconduct in entering into a fraudulent agreement with Louden H. White and R. L. Shelton, by which he promised that he would join said White and Shelton in voting for Madora White as an employee of the said board; (2) that with knowledge of the incompetency of said Madora White to fill the position for which she was se-

lected, he failed to remove or attempt to remove her therefrom; (3) that in voting for the said Madora White as an employee of the said board of education, he did so with the knowledge that Louden H. White, a member of the board, had a direct pecuniary interest therein; (4) that he was guilty of official misconduct in voting for the selection of Mrs. R. L. Shelton as an employee of the board of education, by reason of the fact that the said employee was the wife of R. L. Shelton, a member of the said board of education, well knowing that the said R. L. Shelton was directly or indirectly pecuniarily interested in the employment of his wife as aforesaid.

Certain charges against the said Louden H. White, R. L. Shelton and C. L. Williams jointly may be summaried as follows: (1) that in September, 1941, they entered into a conspiracy and agreement, which contemplated the violation of Chapter 8, Article 5, Section 32, paragraph 3 of the Acts of the Legislature, Extraordinary Session, 1933, as amended by Chapter 33, Acts of the Legislature of 1941; (2) that on the 11th day of October, 1941, in a special meeting of the board of education, they voted affirmatively on a motion to employ Madora White, wife of Louden H. White, a member of the board, as custodian of books at a monthly salary of $100.00 per month, and that knowing said Madora White was neither competent nor qualified to perform the duties assigned to her, they failed to remove her from said position, and paid her for services in connection therewith the sum of $450.00.

It is averred in the petition that the vote of each of the three members of the board of education, against whom the charges were preferred, was necessary to the employment of Madora White and Mrs. R. L. Shelton, the other members of the board either failing to vote on the matter of the employment, or voting in opposition thereto.

On the 9th day of May, 1942, the defendants appeared and interposed their joint demurrer to the petition, and also filed their joint answer. The demurrer was overruled; a replication was filed to the answer; proof was taken on the petition on May 14, 1942; the case was argued and sub-

mitted on May 21, 1942; and on that date, the court made the following findings:

"1. That there is insufficient evidence to sustain the allegation of the petition that Mrs. Madora White was employed by the Board of Education of Logan County as the result of a promise exacted from the respondent Louden H. White by the respondents R. L. Shelton and C. L. Williams; to which finding the petitioners objected and excepted.

2. That the proof adduced herein properly establishes the fact that the respondents did, from the 30th day of September, 1941, until the 12th day of May, 1942, inclusive, vote as a unit on matters before the Board, regardless of the subject matter, pursuant to an agreement to that effect, and the Court finds that such acts and course of conduct constituted misconduct in office; to which ruling of the Court the respondents objected and excepted.

3. That there is insufficient evidence to sustain the charge that respondents herein, and each of them, knew that Mrs. Madora White was an incompetent person, and that, possessing such knowledge, they failed and refused to remove her from office.

4. The Court makes no finding upon the charge contained in the petition that the respondents attempted to deprive the County Superintendent of Schools, Paul C. Winter, of his lawful duties by designating certain named persons to perform the same; to which action of the court the petitioners objected and excepted.

5. That the proof adduced herein sufficiently establishes the fact that the respondents Louden H. White and R. L. Shelton are guilty of the charge contained in the petition alleging them to be pecuniarily interested, directly or indirectly, in the proceeds of the contracts of their respective wives with the Board of Education of Logan County; to which ruling of the Court the respondents objected and excepted.

6. That the evidence adduced herein establishes the fact that the respondent, C. L. Williams, knew, or had reason to know, and is chargeable with knowledge of what the law is in that respect, that the respondents Louden H. White and R. L. Shelton were directly or indirectly pecuniarily interested in the proceeds of the contracts of their respective wives, and the Court doth find that such knowledge and the affirmative vote of the respondent Williams to hire each of the said wives constitutes misconduct in office; to which ruling of the Court respondents objected and excepted."

Upon these findings the court was of the opinion that each of the respondents should be removed from office, and it was ordered that each of them be, and they were thereby, removed from office as members of the board of education of the county of Logan.

It will be observed that the court held that the evidence was insufficient to sustain the charge that Madora White was employed as the result of a promise exacted from the other respondents by Louden H. White; and likewise insufficient to sustain the charge that the respondents knew that Madora White was an incompetent person, and that, possessing such knowledge, they failed to remove her from her position. The court made no finding on the charge of attempted violation of the statute regarding encroachment upon the powers of the county superintendent of schools. We think the court's holdings on these points were correct, and these matters will not be further referred to.

As to the holding of the trial court that the proof established the fact that respondents from the 30th day of September, 1941, to the 12th day of May, 1942, inclusive, voted as a unit on controversial matters before the board regardless of subject matter, and in keeping with an agreement to that effect, and that such acts and course of conduct constituted misconduct in office, we are unable to follow the view of the trial court. It is quite true that the record shows that on all matters on which the board was

divided, Louden H. White, R. L. Shelton and C. L. Williams voted as a unit, and against the vote of the other members of the board, in cases where their votes were cast. In many cases, the vote of the board was unanimous. It seems strange and unusual that this persistent course of conduct of the three men named above was not based upon some character of agreement, but the fact, unusual as it may be, that these votes were so cast, is not *per se* evidence of a fraudulent conspiracy such as to constitute misconduct in office. The question is whether or not the action which their votes effected was an unlawful one. We can hardly say that a lawful and legal act of the board of education, put into effect by the vote of these three men, could be set aside, merely because they had made an agreement to vote together on all subjects. We cannot say, as a matter of law, that the respondents are guilty of misconduct in office warranting their removal therefrom, merely because the record shows that they did vote as a unit on all matters on which the board divided subsequent to the month of September, 1941, until their removal from office in May, following. We do not mean to approve such agreements—we condemn them. It is a sad commentary on the conduct of public affairs when officials surrender their freedom of action in making an agreement such as that alleged in the petition, if they did so, but to make it misconduct justifying their removal from office there must be a showing of some unlawful act resulting from such agreement. The statute does not, in terms, make unlawful the appointment of the wife of a board member as an employee of the board. It merely imposes a penalty on the board member for so doing, based on the theory that in appointing his wife he makes a contract in which he has a pecuniary interest.

This leaves open the question whether the respondents White and Shelton had a pecuniary interest, directly or indirectly, in a contract for which they voted. Code, 61-10-15, expressly provides for the removal from office of any person who becomes, directly or indirectly, pecuniarily interested in the proceeds of any contract or serv-

ice, or in furnishing any supplies in the contract for, or the awarding or letting of, as a member, officer, secretary, supervisor, superintendent, principal, or teacher, he may have any voice, influence or control. The employment of Madora White, the wife of Louden H. White, and Mrs. R. L. Shelton, the wife of R. L. Shelton, was effected by the vote of the two husbands, who were members of the board, and without their votes neither appointment could have been made. Clearly, therefore, they had a voice and influence in bringing about the appointment. C. L. Williams admittedly voted for these two women with knowledge that they were the wives of Louden H. White and R. L. Shelton, respectively, and he is charged with knowledge that their employment created a contract in which it could be said that their husbands were directly or indirectly pecuniarily interested.

The precise question presented has not been decided by this Court. The nearest approach to a decision is that contained in the case of *Arbogast* v. *Shields*, 123 W. Va. 167, 14 S. E. 2d 4. In that case, a member of the Clarksburg Water Board was removed because it was said he had a pecuniary interest in a contract between the water board and an insurance agency in which the board member held a small stock ownership, the agency being substantially owned by his wife, so that the decision may be said to be based upon the fact of the husband's ownership of stock rather than the predominant ownership by the wife. However, it indicates the trend of the Court's thought, because the wife's ownership was referred to in the opinion. Many cases are cited from other jurisdictions in which the question has been decided, and decided in favor of the contention that the employment of a wife by the vote of the husband is not a contract in which he has a pecuniary interest. These cases, for the most part, are based upon the theory of the independent status of the wife in relation to financial matters. Statutes of the same general nature are in effect in this state. Code, 48-3-16, 48-3-1 and 2.

The cases cited by the respondents, from other juris-

dictions, while persuasive, are not binding upon this Court. While the prime purpose of Code, 61-10-15, is to protect the public purse, *Fisher* v. *Jackson,* 107 W. Va. 138, 147 S. E. 541, public policy is likewise involved. While we might not be warranted in removing an official solely on account of some act which we might think violates public policy, not amounting to the statutory definition of misconduct in office, we do have a right to consider such public policy in interpreting statutes which impose penalties for certain acts of a public nature. The cases cited from foreign jurisdictions may be, in some instances, distinguished from the case at bar. For example, some of these cases refer to employment of teachers, and it is well known that in the teaching profession, certain specific qualifications, not prescribed by local boards of education, must be had before their employment. One of the cases refers to the employment of a son. Another case refers to a brother. On the whole, the reasoning of the cited cases is not sufficiently persuasive with us to require us to follow them, and thereby to render less effective the evident purpose of the legislature to avoid contracts in which public officials have a pecuniary interest.

Giving to the various statutes guaranteeing to married women control of their separate estates, and free from the control of the husband, and with recognition of the many legal refinements which may be drawn therefrom, we are still of the opinion that either a husband or a wife, living together as such, has a pecuniary interest in a contract of employment of the other. Particularly is this true with respect to a husband, for the reason that he is liable for the support of his wife, and when she obtains employment, as in this case, and uses the proceeds of such employment, either for herself or for members of her family, she relieves the husband to that extent of some burden which he would otherwise have to carry. There is evidence here that the two wives in question made some expenditures for which it is probable their husbands were liable. We do not decide the case upon the narrow question of these expenditures by the wives.

We prefer to rest our decision on the broad principle that there is still a relation existing between husband and wife, and mutual liabilities growing out of the family relation, which creates, on the part of each, an interest in the contracts of the other, out of which compensation arises, and the proceeds of which are used directly or indirectly within the family circle. We are of opinion, therefore, that Louden H. White and R. L. Shelton each had a pecuniary interest in the contract by which their wives were separately employed with the votes of said White and Shelton. We hold that they had a pecuniary interest therein; we think it was a direct interest; it was certainly an indirect interest, and both are inhibited by the statute. There was no error in the action of the Circuit Court of Logan County removing them from office on that ground.

We now come to the charges against Williams. He is charged with knowledge of the impropriety of the selection of Mrs. White and Mrs. Shelton, and that their husbands had a pecuniary interest in their appointment. However, we have been unable to reach the conclusion that, possessing such knowledge, he was guilty of such misconduct in office as would warrant his removal. Code, 6-6-7, provides that:

> "Any person holding any county, magisterial district, independent school district, or municipal office, including the office of a member of a board of education, the term or tenure of which office is fixed by law, whether elected or appointed thereto, except a judge of a court of record, may be removed by the circuit court of the county wherein such officer or person resides, or the judge of such court in vacation, on any of the grounds, or for any of the causes, for which a state officer may be removed under section five of this article * * *."

Section five referred to above provides that:

> "Any state officer holding any elective office (except the governor, any judge, or a member of the legislature of this State), may be removed

from office, by the governor, in the manner provided in the following section: (a) when disqualified from holding the office under any provision of the Constitution of this State, or any law now in force, or which may hereafter be enacted, whether such disqualification arose before or after his induction into office; (b) for official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality."

Code, 6-6-1, defines the term "neglect of duty" and the term "official misconduct," as including "the wilful waste of public funds by any officer or officers, or the appointment by him or them of an incompetent or disqualified person to any office or position and the retention of such person in office, or in the position to which he was appointed, after such incompetency or disqualification is made to appear, when it is in the power of such officer to remove such incompetent or disqualified person."

To hold that Williams was guilty of misconduct would require us to hold that either Mrs. White or Mrs. Shelton were incompetent or disqualified persons. The charge of incompetency made against Mrs. White was not established according to the trial court's ruling, and no question of the incompetency of Mrs. Shelton was raised. We can hardly say that they were disqualified. It may be argued with some force that inasmuch as the statute makes unlawful the act of a member of a board voting for a contract in which he has a pecuniary interest, a person who becomes the beneficiary of such vote is disqualified to act under such appointment, but we are not prepared to accept that view. The purpose of the statute, apparently, was to impose penalties upon the official who had a pecuniary interest in the appointment. We cannot hold that either Mrs. White or Mrs. Shelton were disqualified, in the sense necessary to create misconduct in office on the part of one who joined in their appointment. This being true, we think the court erred in removing Williams on that ground. And having already disposed of the other charge against him, the result is that we think his removal was not justified.

The order of this Court will be that the action of the Circuit Court of Logan County in removing Louden H. White and R. L. Shelton be affirmed; that its action in removing C. L. Williams be reversed.

Costs will be taxed in favor of the petitioners against Louden H. White and R. L. Shelton, and costs will likewise be taxed in favor of C. L. Williams against the petitioners.

*Affirmed in part; reversed in part.*