388 S.E.2d 491

**Karen COURTNEY, Phyllis Knopp, Carol Crum, Mary Ball, Ruth Boggs, Betty Nida, and District 1199 West Virginia/Kentucky/Ohio, National Union of Hospital and Health Care Employees, AFL–CIO**

**v.**

**STATE DEPARTMENT OF HEALTH OF WEST VIRGINIA and Dr. George Lilley, Jr., its Director; West Virginia Public Employees Insurance Agency and Sally Richardson, its Director; West Virginia Public Employees Retirement System; Civil Service Commission of West Virginia and Lowell Basford, its Acting Director.**

**No. 19196.**

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

Larry Harless, Charleston, for Karen Courtney, Phyllis Knopp, Carol Crum, Mary Ball, Ruth Boggs, Betty Nida and District 1199 WV/KY/OH, Nat. Union of Hosp. and Health Care Employees, AFL–CIO.

Roger Tompkins, Atty. Gen. and Nora M. Antlake, Asst. Atty. Gen., Charleston, for West Virginia Div. of Health and George Lilley, Jr.

James A. Swart, Asst. Atty. Gen., Charleston, for West Virginia Public Employees Ins. Agency, Sally Richardson, and West Virginia Public Employees Retirement System.

Jan Fox, Deputy Atty. Gen., Charleston, for West Virginia Civil Service Com'n.

McHUGH, Justice:

This original proceeding is before the Court upon the petition for a writ of man-

damus filed by approximately 183 former employees of Spencer Hospital, the National Union of Hospital and Health Care Employees, and the AFL–CIO. The respondents are the State Department of Health (currently known as the "Division of Health"), the West Virginia Public Employees Insurance Agency, the Civil Service Commission (currently known as the "Division of Personnel"), and the directors of these agencies. The West Virginia Public Employees Retirement System is also a respondent.

This Court has reviewed the petition, the response, and all briefs. We are of the opinion that the petitioners' writ should be awarded as moulded.

I

Pursuant to an order of the Circuit Court of Kanawha County, Spencer Hospital was permanently closed on June 30, 1989. The employees of the hospital were informed by letter on May 31, 1989, that their services would be "terminated effective June 30, 1989."

The petitioners seek a writ of mandamus compelling the respondents to: (1) grant the petitioners' incremental salary increases pursuant to *W.Va.Code*, 5–5–2 [1984]; and (2) permit the petitioners to apply accrued sick leave toward extended health insurance coverage or toward retirement benefits pursuant to *W.Va.Code*, 5–16–12 [1988].[1] This Court issued a rule, directed to the respondents, to show cause why a writ of mandamus should not be awarded against them in this proceeding.

II

We first address the petitioners' contention that they are entitled to an incremental salary increase.

*W.Va.Code*, 5–5–2 [1984] provides:

Effective for the fiscal year beginning the first day of July, one thousand nine hundred eight-five, every eligible employee with three or more years of service shall receive an annual salary increase equal to thirty-six dollars times the employees' years of service, not to exceed twenty years of service. In each fiscal year thereafter and on the first day thereof, each such employee shall *receive* an annual increment increase of thirty-six dollars for such fiscal year: Provided, That every employee becoming newly eligible as a result of meeting the three years of service minimum requirement on the first day of July in any fiscal year subsequent to one thousand nine hundred eight-five, shall be entitled to the annual salary increase equal to the aforesaid thirty-six dollars times the employee's years of service, where he has not theretofore received the benefit of any such increment computation; and shall receive a single annual increment increase thereafter of thirty-six dollars for each such subsequent fiscal year. These incremental increases shall be in addition to any across-the-board, cost-of-living or percentage salary increases which may be granted in any fiscal year by the Legislature. This article shall not be construed to prohibit other pay increases based on merit, seniority, promotion or other reason, if funds are available for such other pay increases: Provided, however, That the executive head of each spending unit shall first grant the herein mandated increase in compensation to all eligible employees prior to the consideration of any increases based on merit, seniority, promotion or other reason.

(emphasis supplied) [2]

The respondents maintain that because the petitioners were not employed *on July 1, 1989*, they are not entitled to receive the annual incremental salary increase provid-

1. These statutory provisions are discussed *infra*.

2. *W.Va.Code*, 5–5–1 [1986], in relevant part, defines "eligible employee" as "any regular full-time employee of the state or any spending unit thereof who is eligible for membership in any state retirement system of the state of West Virginia or other retirement plan authorized by

the state[.]" We note that this provision, defining "eligible employee" for purposes of *W.Va. Code*, 5–5–2 [1984], does not resolve the dispute in this case. Similarly, there is no dispute in this case as to whether the petitioners satisfy the requirement of "three or more years of service," contained in *W.Va.Code*, 5–5–2 [1984].

ed for by *W.Va.Code*, 5–5–2 [1984]. The petitioners contend, however, that they are entitled to such salary increase because they were employed for the entire fiscal year preceding July 1, 1989, and that July 1 of *any* year is merely the date upon which the annual incremental salary increase is to be paid. We agree with the petitioners' contention.

In *State ex rel. Erwin v. Gainer*, No. 16791 (August 2, 1985) (unpublished order), this Court held that *W.Va.Code*, 5–5–2 [1984] "is designed to supplement the *regular* pay of eligible State employees on the basis of *past and present services*." (emphasis supplied) There, the respondent, the auditor of the state, raised the argument that *W.Va.Code*, 5–5–2 [1984] violates the provisions contained in *W.Va. Const.* art. VI, § 38 and *W.Va.Code*, 12–3–13 [1931].

*W.Va. Const.* art. VI, § 38 provides, in relevant part, that "[n]o extra compensation shall be granted or allowed to any public officer, agent, servant or contractor, after the services have been rendered[.]" *W.Va.Code*, 12–3–13 [1931] provides that "[n]o money shall be drawn from the treasury to pay the salary of any officer or employee before his [or her] services have been rendered." In *Erwin*, we held that *W.Va.Code*, 5–5–2 [1984] does not violate either of these provisions.

■ The issue before us today, however, is whether the petitioners are entitled to *receive* the annual incremental salary increase pursuant to *W.Va.Code*, 5–5–2 [1984]. *See supra* note 2. In order to make this determination, we need not look further than the statute itself. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of

interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord*, syl., *State ex rel. Bowlick v. Board of Education*, 176 W.Va. 524, 345 S.E.2d 824 (1986); syl. pt. 2, *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981).

As previously set forth in this opinion, *W.Va.Code*, 5–5–2 [1984] provides an incremental salary increase to eligible employees "on the first day" of "each fiscal year[.]" Examining the statute as a whole, we do not agree with the respondents' contention that in order to receive such salary increase, one would have to be employed on the first day of the ensuing fiscal year. Rather, it is clear that the first day of the ensuing fiscal year is merely the date upon which such salary increase is to be paid.

As noted in *Erwin* and previously stated herein, *W.Va.Code*, 5–5–2 [1984] provides compensation, as part of the regular pay, for services that were previously rendered. In this case, the petitioners rendered services throughout all of the fiscal year ending June 30, 1989. Therefore, the petitioners are entitled to receive the annual incremental salary increase for that fiscal year.[3]

■ Accordingly, we hold that *W.Va. Code*, 5–5–2 [1984] does not require an employee to be employed on the first day of the ensuing fiscal year in order to be entitled to receive an annual incremental salary increase provided by that statutory provision. Rather, the first day of any fiscal year is the date upon which the incremental salary increase is to be received.

### III

We now address the petitioners' second contention, that the respondents should be compelled to permit the petitioners to apply accrued sick leave toward extended health

---

3. In light of our holding on this issue, we need not address the petitioners' alternate contention that *W.Va.Code*, 5–5–2 [1984] violates the impairment-of-contract clause, *U.S. Const.* art. I, § 10 or equal protection principles, *W.Va. Const.* art. III, §§ 10 & 17 & art. VI, § 39. *See* syl. pt. 4, *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989); *Atchinson v. Erwin*, 172

W.Va. 8, 14, 302 S.E.2d 78, 83 (1983). *See also State ex rel. Harris v. Calendine*, 160 W.Va. 172, 179, 233 S.E.2d 318, 324 (1977).

Furthermore, we need not discuss a California decision upon which the petitioners rely, wherein the *constitutionality* of a similar statutory arrangement was decided. *Theroux v. State*, 152 Cal.App.3d 1, 199 Cal.Rptr. 264 (1984).

insurance coverage or toward retirement benefits pursuant to *W.Va.Code*, 5–16–12(c)–(e) [1988].

*W.Va.Code*, chapter 5, article 16 provides for an insurance plan for state and other governmental employees. *See W.Va.Code*, 5–16–1 and –2(3) [1988].

*W.Va.Code*, 5–16–12(b) [1988] provides, in relevant part:

(b) Should a participating employee be terminated from employment involuntarily or *in reduction of work force*, the employee's insurance coverage provided under this article shall continue for a period of three months at no additional cost to the employee: ... If the employee is again employed or recalled to active employment within twelve months of his prior termination, he shall not be considered a new enrollee and shall not be required to again contribute his share of the premium cost, if he had already fully contributed such share during the prior period of employment.

(emphasis supplied)

Subsections (c) and (d) of *W.Va.Code*, 5–16–12 [1988] provide for a "participating employee" who is "compelled or required by law to *retire* before reaching the age of sixty-five" to apply accrued annual and sick leave toward extended insurance coverage. (emphasis supplied) [4]

Subsection (e) of *W.Va.Code*, 5–16–12 [1988] provides an alternative to subsections (c) and (d) by allowing a "participating employee" who is "compelled or required by law to retire before reaching the age of sixty-five" to apply accrued annual and sick leave toward retirement service credit.

It is the petitioners' contention that they were "compelled or required by law to retire" from their employment at Spencer Hospital, and, therefore, are entitled to apply their accrued annual and sick leave toward extended insurance coverage pursuant to *W.Va.Code*, 5–16–12(c) & (d) [1988], or, in the alternative, toward retirement service credit pursuant to subsection (e) of that statutory provision. We do not agree with this contention.

█ The circuit court's order in this case, closing Spencer Hospital, was clearly a systematic reduction of the hospital facility's population. For example, the circuit court's order stated that by June 30, 1988, the "population at Spencer will be reduced to approximately 90 persons," and by June 30, 1989, the population at Spencer Hospital "will have been entirely removed[.]" Thus, the petitioners' termination from employment at Spencer Hospital was a "reduction in work force," pursuant to the provisions of *W.Va.Code*, 5–16–12(b) [1988]. The petitioners were not "compelled or required by law to retire" pursuant to *W.Va.Code*, 5–16–12(c) or (d) [1988].[5]

█ It is well established that "[s]tatutes which relate to the same subject matter should be read and applied together so

---

**4.** Subsection (c) provides a plan for employees who retired before July 1, 1988, and involves annual leave *and* sick leave. Subsection (d) provides a plan for employees who retire on or after July 1, 1988, and involves annual leave *or* sick leave. Subsection (d) allows a credit toward only one-half of the insurance premium cost.

**5.** In support of their claim, the petitioners refer us to one of the definitions of the word "retire," as found in *Black's Law Dictionary* 1479 (4th ed. rev. 1968): "to separate, withdraw, or remove." *Black's Law Dictionary* 1183 (5th ed. 1979), however, gives only the following definition of "retire": "To terminate employment or service *upon reaching retirement age.*" (emphasis supplied)

The respondents contend that the petitioners do not come within the meaning of "retired

employee," as defined in *W.Va.Code*, 5–16–2(4) [1988]. That definition refers to meeting certain minimum eligibility requirements for retirement under the West Virginia Public Employees Retirement Act, *see W.Va.Code*, 5–10–2(8) & (20) [1988]. The petitioners have not shown that they meet those requirements for retirement.

Because the petitioners have not shown that they are "retired" employees, this Court need not decide whether the circuit court's order with respect to the closing of the hospital comes within the meaning of "compelled or required by law" (to retire). *W.Va.Code*, 5–16–12(c)–(d) [1988].

We do not address the constitutional ramifications, if any, of the early retirement statutory provisions. *See W.Va.Code*, 5–10–22c [1988].

that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord*, syl. pt. 1, *Kimes v. Bechtold*, 176 W.Va. 182, 342 S.E.2d 147 (1986); syl. pt. 4, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984). *See also Manchin v. Dunfee*, 174 W.Va. 532, 536, 327 S.E.2d 710, 714 (1984).

■ It has been stated that "the rule that statutes in pari materia should be construed together has the greatest probative force, in the case of statutes relating to the same subject matter *passed at the same session of the legislature, especially if they* were passed or approved or *take effect on the same day*[.]" 2A N. Singer, *Sutherland [on] Statutes and Statutory Construction* § 51.03, at 469 (Sands 4th ed. rev. 1984) (emphasis supplied) (footnotes omitted).[6]

Consequently, this Court must look at *W.Va.Code*, 5–16–12 [1988] in its entirety. In so doing, we believe subsection (b) of that statutory provision specifically applies to the petitioners in this case.

The petitioners further contend that *W.Va.Code*, 5–16–12 [1988] creates an improper classification of employees and, therefore, violates equal protection principles. *W.Va. Const.* art. III, §§ 10 & 17 & art. VI, § 39. *See* syl. pt. 4, *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989); *Atchinson v. Erwin*, 172 W.Va. 8, 14, 302 S.E.2d 78, 83 (1983). *See also State ex rel. Harris v. Calendine*, 160 W.Va. 172, 179, 233 S.E.2d 318, 324 (1977). We do not agree with this contention.

Fundamentally, "[e]qual protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as

distinguished from a purely private activity." Syl. pt. 2, *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989).

In *Cimino v. Board of Education*, 158 W.Va. 267, 210 S.E.2d 485 (1974), this Court held:

Whether a statute or governmental action violates the Equal Protection Clause is a determination made by the application of one of two constitutional tests. The more demanding test relates to statutes which impinge upon sensitive and fundamental rights and constitutional freedoms, such as religion and speech. In order to uphold such a statute, a reviewing court must find that a compelling state interest is served by the classification.

In all other instances, the constitutionality of a statute, challenged under the Equal Protection Clause, is subject to the traditional standard requiring that the state law be shown to bear some rational relationship to legitimate state purposes. Under this test, the court must consider whether the classification is a rational one based on social, economic, historic or geographical factors; whether the classification bears a reasonable relationship to a proper governmental purpose; and whether all persons within the classes established are treated equally.

*Id.* 158 W.Va. at 274–75, 210 S.E.2d at 490 (citations omitted). These standards have been adopted as equal protection principles under our State *Constitution*. *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 333, 233 S.E.2d 419, 423 (1977).

We have held that classifications of public employees, if based on legitimate economic considerations, are rational and, therefore, not violative of equal protection principles. *State ex rel. Moody v. Gainer*, 180 W.Va. 514, 377 S.E.2d 648 (1988);

---

**6.** We recognize that in this case the pertinent provisions *in pari materia* are not sections of the *W.Va.Code*, but, rather, are subsections of one section, namely, *W.Va.Code*, 5–16–12 [1988]. The rule concerning construction of statutory provisions *in pari materia* applies with at least as much force to subsections of one section as it does to more than one section of statutory provisions.

*Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983).

In *State ex rel. Moody v. Gainer,* 180 W.Va. 514, 377 S.E.2d 648 (1988), this Court stated:

> The equal protection standard which governs *economic classifications* was set forth in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In *McGowan,* the United States Supreme Court held that the Fourteenth Amendment permitted the states a wide scope of discretion in enacting laws which treated groups of citizens differently. Specifically, the Court ruled that:
>
> > 'The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'
>
> 366 U.S. at 425–26, 81 S.Ct. at 1105, 6 L.Ed.2d at 399 (citations omitted).

*Id.* 180 W.Va. at 516, 377 S.E.2d at 650 (emphasis supplied).

Similarly, in syllabus point 7 of *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983), we held:

> Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution.

In this case, the respondents point out that public employees are entitled to the benefits of subsections (c), (d) or (e) of *W.Va.Code,* 5–16–12 [1988], if they are "compelled or required by law to *retire* before reaching the age of sixty-five[.]" (emphasis supplied) For example, the respondents refer to the fact that members of the state department of public safety are *required* in certain circumstances to retire before reaching the age of sixty-five. *W.Va.Code,* 15–2–27 [1988].

The petitioners in this case were not "compelled or required by law to retire," but, rather, as stated previously, their employment was terminated due to a "reduction of work force." Therefore, the petitioners are entitled to the benefits of subsection (b) of *W.Va.Code,* 5–16–12 [1988].

Under situations covered by subsections (c), (d) and (e) of *W.Va.Code,* 5–16–12 [1988], the state can more easily predict the size of its work force and, consequently, can afford its retirees more flexibility in converting annual and sick leave into insurance and retirement benefits.

Under the situation covered by subsection (b) of *W.Va.Code,* 5–16–12 [1988], however, the state must terminate employees from employment due to factors which it cannot as easily predict, for example, the state of the economy or other matters leading to a reduction in work force. Consequently, benefits provided for by subsection (b) of *W.Va.Code,* 5–16–12 [1988] are not as flexible as those provided for by subsections (c), (d) and (e).

Accordingly, we believe the economic distinction between employees terminated from employment due to a "reduction of work force" and employees who are "compelled or required by law to retire before reaching the age of sixty-five" bears a "rational relationship to legitimate state purposes."[7]

---

**7.** Recently, we recognized that "[u]nder equal protection principles, classification by gender must serve an important government objective and must be substantially related to achievement of those objectives in order to withstand an equal protection challenge." Syl. pt. 3, *Israel v. West Virginia Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989). Legislation concerning economic benefits is not subjected to this higher standard of scrutiny in determining whether such legislation violates equal protection principles.

Undoubtedly, the statutory classifications involved in this case result in some financial hardships to the petitioners and other persons similarly situated, that is, those who are terminated from employment due to a "reduction of work force." We are not insensitive to the financial plight of the petitioners. However, we do not believe that these statutory classifications are unconstitutional.

In light of the above, this Court holds that *W.Va.Code,* 5–16–12 [1988] does not violate equal protection principles contained in article III, sections 10 & 17 or in article VI, section 39 of the *West Virginia Constitution.*[8]

### IV

Accordingly, the petition for a writ of mandamus is awarded as moulded herein. The petitioners are entitled to receive an annual incremental salary increase pursuant to *W.Va.Code,* 5–5–2 [1984]. On the other hand, the petitioners are not entitled to the relief afforded by *W.Va.Code,* 5–16–12(c), (d) or (e) [1988].

Writ awarded as moulded.

---

**8.** The petitioners have failed to delineate clearly how *W.Va.Code,* 5–16–12(b) [1988] is violative of the impairment-of-contract clause of the federal constitution, *U.S. Const.* art. I, § 10. We therefore decline to address this claim.