350 S.E.2d 720

**KEITH D., David S., Jason B., James L., children under the age of eighteen years**

v.

**Shirley D. BALL, Ph.D., Superintendent of the Schools of Mineral County, and The Board of Education of Mineral County.**

**No. 17292.**

Supreme Court of Appeals of West Virginia.

Nov. 19, 1986.

---

John C. Purbuagh, WV Legal Services, Charleston, V. Alan Riley, Daniel James, David Webb, Keyser, for appellant.

Howard Seufer, Jr., Richard A. Heyhurst, Parkersburg, for appellee.

BROTHERTON, Justice:

This is an original action in mandamus where the petitioners, four students between the ages of twelve and fourteen, were expelled from Mineral County schools by the respondents, Shirley D. Ball, Superintendent of Schools, and the Mineral County School Board for one year for making false bomb threats. The students are asking this Court to reinstate them in school. We decline to do so and deny the writ of mandamus.

In the winter of 1986, the Mineral County schools were plagued by a rash of false bomb threats. On each occasion of a bomb threat, the schools were closed as a precaution and the students released. Not only were many hours of classroom instruction lost, but also there was a safety problem with unsupervised children being released on account of the bomb threats. In a tragic incident, two students went to the Potomac River to play after being released

from school due to a bomb threat, and subsequently drowned.

With these events in mind, Ms. Ball and the school board were not sympathetic to the perpetrators of these actions when they were caught. In each of the four cases before the Court, Ms. Ball recommended the maximum penalty of a one-year expulsion under W.Va.Code § 18A–5–1a(d) (1984), and in each case the school board implemented her recommendation.

## I.

■ Courts should not interfere with the decisions of school board officials in disciplinary matters except in extreme cases. *See Adams v. City of Dothan Bd. of Educ.*, 485 So.2d 757, 761 (Ala.Civ.App. 1986). We see no extreme circumstances in this case which would require our intervention.

The students argued that their fundamental constitutional right to education is being abridged.[1] Nevertheless, it is this right that they were denying to their fellow students. On over two dozen different days, classes at the Mineral County schools were disrupted by bomb threats. Classes were cancelled and students released from school.

■ Conduct by a student,[2] whether in class or out, whether it stems from the time, place, or type of behavior, which materially disrupts classwork or involves substantial disorder or invasion of the rights of others, is not constitutionally immunized. *See, e.g., Tinker v. Des Moines In-*

dep. *Community School Dist.*, 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969) (First amendment); *see generally* Annot., 32 A.L.R.3d 864, 868 (1970). An individual does not have the right to exercise his fundamental constitutional rights at all times, under all circumstances, and by all methods. An exercise of rights in such a fashion that it deprives others of their lawful rights may result in a forfeiture of those rights. *See Barker v. Hardway*, 283 F.Supp. 228, 238 (S.D.W.Va.), *aff'd per curiam*, 399 F.2d 638 (4th Cir. 1968), *cert. denied*, 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969). If an individual chooses to exercise his right to education in such a fashion as to disrupt schools and deny that right to others, then he may forfeit the right to attend. The students in this case have temporarily forfeited their right to education.[3] Therefore, the board's action was not unconstitutional.[4]

■ Further, we do not feel that the suspension in this case was of such an extreme duration as to be grossly disproportionate to the acts committed by the students. False reports concerning bombs or other explosive devices constitute a misdemeanor, and if the children were adults they would be subject to a fine of up to $500 or imprisonment in the county jail for up to one year, or both. W.Va.Code § 61–6–17 (1984). The students' activities disrupted the orderly function of the schools. With these facts in mind, we cannot say that the sentence did not fit the crime.

■ The students also argue that the school board violated its own regulations as

1. West Virginia Constitution, art. XII, § 1, provides that: "The legislature shall provide by general law, for a thorough and efficient system of free schools." Therefore, education is "a fundamental constitutional right in this State." Syllabus point 3, *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979).

2. That the individuals here were in a school setting is an important factor in this decision. We noted in *State v. Joseph T.*, 175 W.Va. 598, 336 S.E.2d 728, 732 (1985), that the school setting requires an easing of some constitutional restrictions in order to maintain discipline. Nevertheless, students "do not 'shed their constitutional rights' at the schoolhouse door.... The authority possessed by the State to pre-

scribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistantly with constitutional safeguards." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975).

3. The fact that the forfeiture is temporary is important. A temporary deprivation of constitutional rights does not require the protection that a permanent deprivation would. *See* syl. pt. 2, *North v. West Virginia Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977).

4. No claim was made that the students' due process rights were abridged, as in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

set forth in the student handbook by imposing a penalty for a first-offense bomb threat greater than a ten-day suspension. This argument rests on a document which the Board of Education of Mineral County provided to each student and parent entitled "Keyser Middle School Parent-Student Handbook." Under the section "discipline" there is a heading entitled "severe cause" with ten numbered types of prohibited behavior and the stated consequences. Severe offense no. 9 provides that "falsely set fire alarms and bomb threats are prohibited. CONSEQUENCE: First violation—ten days out of school. Second violation—recommendation for expulsion." At the bottom of the offenses there is a provision which reads: "THE CONSEQUENCES ARE THE MINIMUM FOR EACH OFFENSE. THE PENALTY COULD BE MORE SEVERE THAN THE ONE LISTED." (Capitalization in original). The students argue that the warning note at the bottom was not enough and that the handbooks misled the students about what results they could expect from their behavior.

The handbook's warning was clear and within the power of the board to issue, and, therefore, the school board was not bound to impose the minimum punishment set out in the handbook.

## II.

■ We do not, however, agree entirely with the school board's decision. The school board expelled the students for a calendar year. West Virginia Code § 18A–5–1a(d) (1984) provides that the board of education may expel a pupil "for a period of time not to exceed *one school year.*" (Emphasis added). A school year and a calendar year are not the same thing. The obvious intention of the legislature was that the students would be expelled for a lengthy period of time, but not so that they would lose more than one year in their studies. The students argue that they lost one year of credit for the year that they did not finish and that they will lose another year of credit for this year, which they did not start on time. We recognize that it would be difficult for the students to begin in the middle of a semester and try to pick up their class work from where they left off. More than a school year of instruction could thus be lost. So that the students do not lose more than one year of instruction, we interpret the term "school year" in W.Va.Code § 18A–5–1a(d) to mean 180 days of instruction, divided into two 90–day semesters. A student may be expelled for a period including part or all of two semesters. In this case the students have lost credit for the spring semester of 1986 and they will lose credit for the fall semester of 1986. We, therefore, hold that they should be readmitted for the spring semester of 1987 so that they may apply their fall semester of 1985 with their spring semester of 1987 to make one year's instruction. This relief is prospective only, however, and requires no action by the school board at this time.[5]

Because the petitioners have not shown a right to immediate relief, their writ of mandamus is hereby denied, with each party to pay his own costs and attorneys' fees.

Writ denied.

---

5. Some of the students were classified as "exceptional children" because of learning disabilities. These students argue that the board of education is required under W.Va. Code §§ 18–20–1 (1984) and 18–20–2 (Supp.1986) to provide alternative educational programs even if they are expelled. This is true under certain circumstances. West Virginia Code § 18A–5–1a(e) (1984) sets out an explanation of when the board is required to give an "exceptional child" alternative education. A hearing must first be held wherein the pupil, his parent or custodial guardian may show an explanation of the actions complained of, showing that such actions were a result of the pupil's condition as an exceptional child. If the principal or the board finds that such actions were the proximate result of the condition, then the pupil should not be suspended or expelled, but should be referred for an alternative learning program.

It is unclear whether such a hearing was held in this case. Nevertheless, because the expulsion period is almost complete, no meaningful program could be organized in time, and we therefore decline to make a holding on this issue, but note that the courts should require evidence of such a hearing and the findings by the board in future cases.