484 S.E.2d 909

PHILLIP LEON M., and Sharon C., as
Next Friends of J.P.M., Petitioners
Below, Appellees,

v.

GREENBRIER COUNTY BOARD OF
EDUCATION, Stephen Baldwin, Super-
intendent; and Bruce Bowling, Jim
Anderson, Sue King, Gordon Hanson
and John Deitz, Individually and as
Members of the Greenbrier County
Board of Education, Respondents Be-
low, Appellants.

No. 23349.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 13, 1996.

Jesse O. Gullis, Jr., Lewisburg, for Appellants.

Eric M. Francis, Lewisburg, for Appellees.

Gregory W. Bailey, Charleston, for Amici Curiae, The West Virginia Association of School Administrators, and the Boards of Educations of Barbour, Boone, Gilmer, Jackson, Kanawha, McDowell, Pocahontas,

Roane, Taylor, Tucker, Wayne, Wetzel & Wyoming Counties.

Jodie M. Boylen, Assistant, Wood County Prosecutor's Office, Parkersburg, for Amicus Curiae, The Board of Education of the County of Wood.

RECHT, Judge, delivered the Opinion of the Court.[1]

The Greenbrier County Board of Education, *et al.*[2] (hereinafter Board of Education) appeals an order of the Circuit Court of Greenbrier County requiring the Board of Education to provide some form of alternative education to J.P.M.[3], who was expelled after bringing a firearm onto school property. Based on the constitutional guarantees of equal protection and "a thorough and efficient system of free schools" (W. Va. Const., art. III, § 10 and art. XII, § 1, respectively), the circuit court found that although J.P.M., through his behavior, had forfeited his right to attend a specific educational facility, J.P.M. did not totally forfeit his right to an education and services from the Board of Education. On appeal, the Board of Education argues that the circuit court erred in failing to find that J.P.M., by bringing a firearm to school, had forfeited his right to an education. Based on the fundamental right to an education, guaranteed by the West Virginia Constitution, we find that although J.P.M. by his action forfeited his right to attend a particular school, he did not completely forfeit his right to some form of an education by the Board of Education, and therefore, we affirm the decision of the circuit court.

## I.

### FACTS AND BACKGROUND

On November 4, 1994, J.P.M. was found during regular school hours with a firearm in his possession on the grounds of Eastern Greenbrier Junior High School. At that time, J.P.M. was a fifteen-year old ninth grade pupil at the junior high school. On November 14, 1994, J.P.M. was expelled from November 16, 1994 through November 15, 1995, or 180 school days, two full semesters.[4]

Because of the incident, a juvenile petition was filed against J.P.M. charging him with three counts of delinquency under W. Va. Code 49–5–7 (1982). On January 20, 1995, J.P.M. admitted to one act of delinquency, a violation of W. Va.Code 61–7–8 (1989) (prohibiting the possession of deadly weapons by minors)[5] and the other two counts were dismissed.

According to the record, J.P.M. was adjudged a juvenile delinquent and placed in

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. In addition to the Greenbrier County Board of Education, the respondents/appellants include the Superintendent, Stephen Baldwin, and members of the Greenbrier County Board of Education, Bruce Bowling, Jim Anderson, Sue King, Gordon Hanson and John Deitz.

3. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather then their full names. *See In re Katie S. and David S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996); *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). In this case, the petitioners/appellees are Phillip Leon M. and Sharon C., as next friends of J.P.M., an infant under the age of eighteen (18) years.

4. This case arose before the adoption of the West Virginia Productive and Safe Schools Act of 1995, W. Va.Code 18A–5–1a (effective March 11, 1995), which provides for expulsion "for a period of not less that twelve consecutive months" (subsection (g)) for a violation of "the provisions of subsection (b), section eleven-a [§ 61–7–11a(b) ], article seven, chapter sixty-one of the code" (subsection (a)). W. Va.Code 61–7–11a(b)(1995) provides, in pertinent part:

   (1) It shall be unlawful for any person to possess any firearm or any other deadly weapon ... in or on any public or private primary or secondary education building, structure, facility or grounds thereof....
   (3) Any person violating this subsection shall be guilty of a felony, and upon, conviction thereof, shall be imprisoned in the penitentiary of this state for a definite term of years of not less than two years nor more the ten years, or fined not more than five thousand dollars, or both.

5. W. Va.Code 61–7–8 (1989) provides:

   Notwithstanding any other provision of this article to the contrary, a person under the age

the care and custody of the West Virginia Commissioner of Corrections for a one-year period, but his sentence was suspended provided he attends school regularly. According to the circuit judge, the reasons for J.P.M.'s suspended sentence include:

> [O]ne, it's in the best interest of this juvenile to attend school, and it is necessary to accomplish his rehabilitation needs; two, the State of West Virginia, through its Commissioner of Corrections, has taken the position that he is not a suitable candidate for probation unless there is mandatory school attendance; and three, the law requires him to attend school.

Having received conflicting plans/punishments from the criminal justice system (attend school regularly) and the Board of Education (no school for a year), on July 7, 1995, J.P.M. filed an amended petition for a writ of mandamus seeking some regular form of education from the Board of Education. The petition alleges that the Board of Education "acted arbitrarily and capriciously by terminating, abrogating and abandoning their constitutional responsibility to educate J.P.M." The relief sought included: (1) providing an education for J.P.M.; (2) liability for any costs incurred or to be incurred by the Petitioners for providing an education independent of the Board of Education; (3) court costs; (4) attorney's fees; and (5) other "fit and proper" relief.

After receiving the Board of Education's response and holding hearings, on August 24, 1995, the circuit court entered an order requiring the Board of Education to provide educational services to J.P.M. as of Monday August 28, 1995. The circuit court found that J.P.M. has a constitutional right to an education, and by his actions, while he had "forfeited his right to attend a specific educational facility, said juvenile did not forfeit his right to educational facilities and services within Greenbrier County." The Board of Education was ordered "to provide educational services to said juvenile, J.P.M., including but not limited to home bound instruction, within the discretion of the Respondents." The circuit court denied J.P.M.'s request for reimbursement of educational costs and specifically found that the Board of Education was not responsible for "the costs of educational services at a private institution." Certain "reasonable" attorney's fees were awarded and a stay pending appeal to this Court was denied.[6]

The Board of Education appealed to this Court maintaining: First, that because the Board of Education did not have a duty to provide an education to an expelled student, at least one of the elements necessary for writ of mandamus was lacking; and, Second that the Board of Education is not required by the West Virginia Constitution "to provide an alternative education to an expelled student." Because these two contentions are based on the same premise, namely, that by his acts, a pupil can forfeit all rights to a state provided education, the heart of our opinion centers on the right of a misbehaving pupil to an education in West Virginia.

## II. :

## DISCUSSION

### A. *Standard of Review*

■ A circuit court's interpretation of the West Virginia Constitution is reviewed *de*

---

of eighteen years who is not married or otherwise emancipated shall not possess or carry concealed or openly any deadly weapon: Provided, That a minor may possess a firearm upon premises owned by said minor or his family or on the premises of another with the permission of his or her parent or guardian and in the case of property other than his or her own or that of his family, with the permission of the owner or lessee of such property: Provided, however, That nothing in this section shall prohibit a minor from possessing a firearm while hunting in a lawful manner or while traveling from a place where he or she may lawfully possess a deadly weapon, to a hunting

site, and returning to a place where he or she may lawfully possess such weapon.

A violation of this section by a person under the age of eighteen years shall subject the child to the jurisdiction of the circuit court under the provisions of article five, [§ 49–5–1 et seq] chapter forty-nine of this code, and such minor may be proceeded against in the same manner as if he or she had committed an act which if committed by an adult would be a crime, and may be adjudicated delinquent.

**6.** According to the appellees' brief, the Board of Education elected to return J.P.M. to his regular classroom after the circuit court's order requiring an alternative program.

*novo. See* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review"). The *de novo* review we apply today is that same review applied to a circuit court's conclusions of law and interpretations of statutes and rules. *See State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996).

■ In this case, J.P.M. sought relief through a petition of a writ of mandamus, which was granted by the circuit court. Our standard of appellate review of a circuit court's decision to grant relief through an extraordinary writ of mandamus is *de novo. See* Syl. pt. 1, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995)(granting relief through an extraordinary writ of mandamus is reviewed *de novo* ); *State ex rel. Cooper v. Caperton, supra;* Syl. pt. 2, *McComas v. Bd. of Educ. of Fayette County,* 197 W.Va. 188, 475 S.E.2d 280 (1996).

In this case, the resolution of the extent of a pupil's right to an education requires an interpretation of the West Virginia Constitution. Because interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a *de novo* review, the same standard we apply to the granting of relief through a writ of mandamus.

### B. *Right to an Education*

■ "The legislature shall provide, by general law, for a *thorough and efficient system of free schools.*" (Emphasis added.) W. Va. Const. art. XII, § 1. In *Pauley v. Kelly,* 162 W.Va. 672, 689, 255 S.E.2d 859, 869 (1979), we noted that the educational requirement was adopted when the Constitu-

tion was approved in 1872 and it "remains essentially for our purposes unchanged to this day." In *Pauley v. Kelly,* after an extensive analysis of the terms of W. Va. Const. art. XII, § 1 and a review of other constitutions of jurisdictions, we held that "education is a fundamental constitutional right in this State." 162 W.Va. at 707, 255 S.E.2d at 878. Syl. pt. 3 of *Pauley v. Kelly* states:

> The mandatory requirements of "a thorough and efficient system of free schools" found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State.

*See* Syl. pt. 4, *Israel by Israel v. W. Va. Secondary Schools Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989)("West Virginia's constitutional equal protection principle is a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution").

■ It is beyond cavil that when a state acts to the disadvantage of some suspect class or to impinge upon a fundamental right explicitly or implicitly protected by the West Virginia Constitution, strict scrutiny will apply, and the state will have to prove that its action is necessary because of a compelling government interest.[7] In *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991), we noted the three types of equal protection analysis.

> First, when a suspect classification, such as race, or a fundamental, constitutional right, such as speech, is involved, the legislation must survive "strict scrutiny," that is, the legislative classification must be necessary to obtain a compelling state interest. *Deeds v. Lindsey,* 179 W.Va. 674, 677, 371 S.E.2d 602, 605 (1988).[8]

7. Although we are interpreting a fundamental right under the W. Va. Constitution, the test we apply, strict scrutiny is the same test applied by the U.S. Supreme Court when interpreting such a right under the U.S. Constitution. In *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16, 33 (1973), education was found not to be fundamental right under federal law, and therefore, a state's system need only to bear some rational relationship to legitimate state purposes not violate the federal equal protection clause.

8. *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. at 691, 408 S.E.2d at 641, provided the following descriptions of the "middle-tier" and the "rational basis" types of equal protection analysis:

> Second, a so-called intermediate level of protection is accorded certain legislative classifications, such as those which are gender-based, and the classifications must serve an important governmental objective and must be substantially related to the achievement of that objective. Syl. pt. 5, *Israel. See also* syl. pts. 3–4, *Shelby J.S. v. George L.H.,* 181 W.Va. 154, 381

In *Pauley v. Kelly,* after determining that education is a fundamental constitutional right, guaranteed under our equal protection clause of W. Va. Constitution art. III, § 10, we required any discriminatory classification in the school financing system to serve a compelling State interest. Syllabus Point 4 of *Pauley v. Kelly* states:

> Because education is a fundamental, constitutional right in this State, under our Equal Protection Clause any discriminatory classification found in the State's educational financing system cannot stand unless the State can demonstrate some compelling State interest to justify the unequal classification.

*See State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977); *Cimino v. Bd. of Educ. of County of Marion,* 158 W.Va. 267, 210 S.E.2d 485 (1974).

Because the W. Va. Constitution recognizes education as a fundamental right, under the equal protection clause, any denial of the right to an education cannot withstand strict scrutiny unless the State can demonstrate some compelling State interest to justify that denial. Has the State of West Virginia demonstrated some compelling State interest for denying some form of alternative education to a class of pupils whose disruptive behavior justifies their removal from the regular classroom for a period of time?

Implicit within the constitutional guarantee of "a thorough and efficient system of free schools" is the need for a safe and secure school environment. Without a safe and secure environment, a school is unable to fulfill its basic purpose of providing an education. However, the State, by refusing to provide any form of alternative education, has failed to tailor narrowly the measures needed to provide a safe and secure school environment. Therefore, we find that the "thorough and efficient" clause of Article XII, Section 1 of the West Virginia Constitution, requires the creation of an alternative program for pupils suspended or expelled from their regular educational program for a continuous period of one year for the sole reason of possessing a firearm or other deadly weapon at an educational facility. To the extent that *Keith D. v. Ball,* 177 W.Va. 93, 350 S.E.2d 720 (1986), is inconsistent with this opinion, it is modified.[9]

In this case, we must balance the right of many for a safe and secure environment against the right to an education for those who have threatened that security. In *Keith D. v. Ball,* 177 W.Va. 93, 350 S.E.2d 720 (1986), we recognized that an indispensable element of providing a thorough and efficient program of education for all public school students was a safe and secure environment, and we refused to require the reinstatement in school of four pupils who were expelled for a year because they made false bomb threats. In *Keith D. v. Ball,* 177 W.Va. at 95, 350 S.E.2d at 722–23, we said:

> Conduct by a student, whether in class or out, whether it stems from the time, place, or type of behavior, which materially disrupts classwork or involves substantial disorder or invasion of the rights of others, is not constitutionally immunized. *See, e.g., Tinker v. Des Moines Indep. Commu-*

S.E.2d 269 (1989) (illegitimacy cases). As we expressed in *Israel,* however, this "middle-tier" equal protection analysis is "substantially equivalent" to the "strict scrutiny" test stated immediately above. *Israel,* 182 W.Va. at 461–462, 388 S.E.2d at 488.

Third, all other legislative classifications, including those which involve economic rights, are subjected to the least level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose. We recently reformulated this "rational basis" type of equal protection analysis in syllabus point 4 of *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991)....

**9.** Both the *amici curiae* briefs urge this Court to concentrate on the safety of the children who attend regularly and conform their conduct to the rules of the schools. We recognize that a safe and secure school environment is of paramount importance; however, given the plenitude of educational alternatives which do not require the return of the miscreant child to a normal school setting, we find the safety of our schools is not compromised by requiring an alternative education for the miscreant child. Indeed, the development of alternative programs should help insure a safe and secure school environment, because school officials will have more options for dealing with children who have behavioral problems.

*nity School Dist.*, 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969) (First amendment); *see generally* Annot., 32 A.L.R.3d 864, 868 (1970). An individual does not have the right to exercise his fundamental constitutional rights at all times, under all circumstances, and by all methods. An exercise of rights in such a fashion that it deprives others of their lawful rights may result in a forfeiture of those rights. *See Barker v. Hardway*, 283 F.Supp. 228, 238 (S.D.W.Va.), *aff'd per curiam*, 399 F.2d 638 (4th Cir.1968), *cert. denied*, 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969). If an individual chooses to exercise his right to education in such a fashion as to disrupt schools and deny that right to others, then he may forfeit the right to attend. The students in this case have temporarily forfeited their right to education. Therefore, the board's action was not unconstitutional. (Footnotes omitted.)

We clarify that *Keith D. v. Ball*, is limited to the question of whether the school officers violated the constitutional right to an education in removing the children from their usual school. Because *Keith D. v. Ball* does not address whether children retain a constitutional right to an education outside of their usual school, its holding is limited to specific circumstances of that case.

Although in *Keith D. v. Ball*, we approved of removing pupils from a school environment because of their actions, this case presents the harder question of what happens to a pupil who by his/her actions causes the pupil's removal from his or her usual school environment. The deference usually accorded to school officials in disciplinary matters

(*See* Syl. pt. 1, *Keith D. v. Ball*) does not extend to violating a pupil's constitutional right to an education, absent a compelling State interest. The benefits of education to both society and the individual are substantial, because education provides the knowledge and skills necessary to earn a living, to participate effectively in a democratic society and to realize individual potential. Without an education, an individual is more likely to require public assistance, to require unemployment compensation, to earn substantially less money and to become involved in criminal activity.[10]

Thus the question in the case *sub judice* is whether the State has shown a compelling State interest as to why it should not be required to provide an alternative form of education for J.P.M. The circuit court, after noting that counties other than Greenbrier provide alternative forms of education, found that Greenbrier should also provide an alternative form of education. The circuit court also left the form of education to be provided to the discretion of the school officials.

In this case, the Board of Education's main concern appears to be the lack of resources to finance an alternative program. Although the lack of resources is a major problem for some alternative education, standing alone, the lack of financial resources does not present a compelling State interest to justify the denial of J.P.M.'s constitutional right to an education. *See Randolph County Bd. of Educ. v. Adams*, 196 W.Va. 9, 23, 467 S.E.2d 150, 164 (1995)("Financial hardship clearly cannot be the appropriate test to be applied in defining 'free schools' "); Syl. pt. 2, *State ex rel. Bd. of Educ., County of Kanawha v.*

---

**10.** *See* R.C. Smith & Carol A. Lincoln, *America's Shame, America's Hope* (1988)(positive relationship between children who dropout and the need for public assistance); Van Doughtery, *Youth a Risk; The Need for Information* in *Children at Risk* 45 (Joan M. Lakebrink, ed., 1989) (positive relationship between children who dropout and the need for unemployment assistance); Smith & Lincoln (earning-capacity disparity between children who dropout and high school graduates); Terence P. Thornberry, *et al.*, *The Effect of Dropping Out of High School on Subsequent Criminal Behavior*, 23 Criminology 3, 7 (1985). *See generally*, Roni R. Reed, Note, *Education and the State Constitutions: Alternatives for Suspended and Ex-*

*pelled Students*, 81 Cornell L.Rev. 582, 605–7 (1996).

We note that the suspension rates for minority students are much higher than those for white students. *See* Julie Underwood, *Legal Protections for At Risk Children*, in *Children At Risk* 96; *Hawkins v. Coleman*, 376 F.Supp. 1330 (N.D.Tex. 1974) (disproportionate number of black students suspended and given corporal punishment); *Sherpell v. Humnoke School Dist. No. 5 of Lonoke County, Ark.*, 619 F.Supp. 670 (E.D.Ark. 1985), *appeal dismissed*, 814 F.2d 538 (1987) (too much discretion led to increased discipline for black students).

*Rockefeller,* 167 W.Va. 72, 281 S.E.2d 131 (1981)("Because of public education's constitutionally preferred status in this State, expenditures for public education cannot be reduced under W.Va.Code, 5A–2–23, in the absence of a compelling factual record to demonstrate the necessity therefor").

Without alternative education, children similar to J.P.M. become orphans, abandoned by the educational system, without anyone to educate them and give them the opportunities inherent in being an educated person.[11] Children with more disruptive behavior are educated within the criminal justice system. Children with financially able parents are educated privately. Children with disabilities that may create disruptions are educated within the public system. Children with similar disruptive behavior in other counties are educated through alternative schools or other programs. If the West Virginia Constitution makes education a fundamental right, then children similar to J.P.M. must be afforded an education and services. J.P.M., and other similar children, are not orphans of the educational system because the West Virginia Constitution bars their abandonment, unless the State can demonstrate a compelling State interest.

Disruptive acts endangering the other children and the staff cannot be condoned, but the measures needed to assure a safe and secure school environment have not been shown in this case to require the *total* sacrifice of this child's right to an education. We wish to make it crystal clear that pupils who misbehave should not be rewarded for their conduct. These pupils should and do forfeit their right to continue as regular pupils in a traditional, mainstream classroom setting with all the privileges typically associated with being a regular student, such as, interscholastic and intermural athletics; music, drama and speech programs; and all other extracurricular activities. However, under a strict scrutiny analysis, the State is required to tailor narrowly the measures used to provide a safe and secure school environment so as to preserve the child's fundamental, constitutional right to an education. By providing alternative education for pupils, the State can accomplish both goals, helping pupils become educated citizens and creating safe and secure school environments.[12]

In Syl. pt. 5 of *Pauley v. Kelly,* we found that the West Virginia Constitution required the Legislature to develop a high quality State-wide educational system by stating:

> The Thorough and Efficient Clause contained in Article XII, Section 1 of the West Virginia Constitution requires the Legislature to develop a high quality State-wide education system.

Similar to *Pauley v. Kelly,* in this case, we hold that the thorough and efficient clause of our Constitution requires the creation of an alternative program for pupils suspended or expelled from their regular educational program for a continuous period of one year for the sole reason of possessing a firearm or other deadly weapon at an educational facility. To the extent that *Keith D. v. Ball, supra,* is inconsistent with this opinion, it is modified.

---

11. We are also concerned about the pernicious effect on children because of their removal from all education for a significant period. This concern is similar to the need for prompt adjudication in other areas where children are at risk. *See In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995)(noting a child's need for prompt resolution concerning parental rights); Syl. pt. 1, in part, *In Interest of Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991)("Unjustified procedural delays wreak havoc on a child's development, stability and security").

12. In the cases before us resulting in suspension, the time of suspension is lengthy, the prohibited conduct is defined in essentially *per se* terms, and the likely effect on the student substantial.

We do not exclude the possibility that a scheme of discipline may be developed which would, in certain circumstances clearly defined in time, seriousness or repetition of prohibited conduct or other factors, preclude an offender from even an alternative program of education for some appropriate period of time.

We commit to the discretion of the authorities charged with the direction and control of our education system whether they undertake attempts to develop such a discrete scheme or simply provide alternative programs in all situations. If such a scheme is developed, we caution that it must be narrowly tailored in all respects to achieve compelling governmental interests and would be best grounded on sound fact and analysis.

### C. *Writ of Mandamus*

■ Our traditional rule outlining the elements necessary for the issuance of a writ of mandamus was stated in Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969):

A writ of mandamus will not issue unless three elements coexist—(1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of respondent to do the thing which petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 2, *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996); Syl. pt. 1, *Hickman v. Epstein*, 192 W.Va. 42, 450 S.E.2d 406 (1994).

Because we have found that J.P.M. had "a clear right" to an alternative form of education, we find that the circuit court's award of a writ of mandamus proper.

### D. *Attorney's Fees*

■ The circuit court found that the petitioners below were entitled to reasonable attorney's fees to be paid by the Board of Education. On appeal, the Board of Education argues that because it "honestly and in good faith endeavored to perform its duties," the award of attorney's fees and costs is inappropriate. J.P.M. maintains that this Court's emphasis of the fundamental, constitutional right to an education along with a similar emphasis on March 8, 1990 by then Attorney General Roger W. Tompkins ("Any strike by teachers would deprive students of their fundamental, constitutional right to a thorough and efficient education ... [and] would ... [be] illegal and in violation of public policy") show a deliberate and knowing refusal requiring the award of attorney's fees and costs.

■ Recently in *W.Va. Educ. Ass'n v. Consol. Pub. Retir. Bd.*, 194 W.Va. 501, 514, 460 S.E.2d 747, 760 (1995), we discussed when under *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Division of Environmental Protection*, 193 W.Va. 650, 458 S.E.2d 88 (1995) (*Highlands II*), attorney's fees and costs should be awarded by stating:

In an effort to provide guidance to the bench and bar, we synthesized all three categories of cases into two general contexts where attorneys' fees and expenses may be awarded to a prevailing petitioner in a mandamus action as: (1) where a public official has deliberately and knowingly refused to exercise a clear, legal duty; and (2) where a public official has failed to exercise a clear, legal duty, although the failure was not the result of a decision to disregard knowingly a legal command. *See Highlands II*, 193 W.Va. at 654, 458 S.E.2d at 92.

This analysis of when to award attorney's fees and costs is outlined in Syl. pts. 10 and 11 of *W.Va. Educ. Assn. v. Consol. Pub. Retir. Bd.* Syl. pt. 10 states:

Where a public official has deliberately and knowingly refused to exercise a clear, legal duty a presumption exists in favor of an award of attorneys' fees and expenses unless extraordinary circumstances indicate an award would be inappropriate, then attorneys' fees and expenses would be allowed. *State of West Virginia ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Division of Environmental Protection*, 193 W.Va. 650, 654, 458 S.E.2d 88, 92 (1995).

Syl. pt. 11 states:

Where a public official has failed to exercise a clear, legal duty, although the failure was not the result of a decision to knowingly disregard a legal command, there is no presumption in favor of an award of attorneys' fees with the following factors to be considered in whether or not to award attorneys' fees and expenses and in what amount: (a) the relative clarity by which the legal duty was established; (b) whether the ruling promoted the general public interest or merely protected the private interest of the petitioner for a small group of individuals; and (c) whether the petitioner has adequate financial resources such that it could afford to protect its own interests in court and as between the government and the petitioner. *State of West Virginia ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Divi-*

*sion of Environmental Protection,* 193 W.Va. 650, 654, 458 S.E.2d 88, 92 (1995).

In this case, we find that the record supports the circuit court's awarding of attorney's fees and costs because the Board of Education had deliberately and knowingly refused to provide J.P.M. with an alternative education as required by the West Virginia Constitution.

We note that the appellees request attorney's fees incurred in connection with this appeal. We find the award of attorney's fees for this appeal is also justified under Syl. pt. 10 of *W.Va. Educ. Ass'n v. Consol. Pub. Retir. Bd.* If the parties are unable to agree upon the amount of reasonable attorney's fees incurred in defending this appeal, the circuit court, upon application of either party, should conduct a hearing to determine the amount of such fees.

For the above stated reasons, we affirm the decision of the Circuit Court of Greenbrier County.

Affirmed.

McHUGH, C.J., concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

WORKMAN, J., reserves the right to file a dissenting and/or concurring opinion.

McHUGH, Chief Justice, concurring, in part, and dissenting, in part:

Although I agree with the majority's statement that providing a safe and secure school environment is a compelling State interest, I disagree with the majority's conclusion that *in all circumstances W. Va. Const.* art. XII, § 1 "requires the creation of an alternative program for pupils suspended or expelled from their regular educational program for a continuous period of one year for the sole reason of possessing a firearm or other deadly weapon at an educational facility." Syl. pt. 4, in relevant part, *Phillip Leon M. v. Green-*

*brier County Board of Education,* 199 W.Va. 400, 484 S.E.2d 909 (1996).[1]

As noted by the majority, education is a fundamental, constitutional right in this State pursuant to *W. Va. Const.* art. XII, § 1. *See* syl. pt. 3, *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979). Thus, if the State takes some action which denies or infringes upon a person's fundamental right to an education, then strict scrutiny will apply and the State must prove that its action is necessary to serve some compelling State interest. *See* syl. pt. 3, *Phillip Leon M., supra,* and *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991). Furthermore, any denial or infringement of the fundamental right to an education for a compelling State interest must be narrowly tailored. *Cf. Wheeling Park Commission v. Hotel and Restaurant Employees, International Union, AFL–CIO,* 198 W.Va. 215, 221, 479 S.E.2d 876, 882 (1996) (When analyzing whether a restriction imposed by the government violates a person's right to free speech is content-based, the government must show that its limitation on the expressive activity " 'is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' " (citation omitted)).

The majority acknowledges that providing a safe and secure school environment is a compelling State interest. No one can disagree that the increase in the number of students who are bringing firearms and other deadly weapons onto school property is a serious issue currently facing our educational system. The presence of firearms or other deadly weapons in our schools not only disrupts the educational process, but threatens human life. Thus, it is imperative that the leaders in our schools have authority to take the actions needed to protect students, teachers, and other school personnel. The majority and I agree that the state has a compelling State interest in protecting students, teachers and other school personnel. The majority and I disagree, however, on what actions may be taken without violating our

---

1. I recognize that one issue which could be raised is whether it would violate the equal protection provision of our State constitution if one county school system provides alternative education when another county school system does not. However, because this issue is not addressed by the majority, I decline to address it in my dissent.

**410**

constitution when a student brings a firearm or deadly weapon onto school property.

As previously set forth by the majority, the Greenbrier County Board of Education in the case at bar expelled J.P.M., a ninth grade student, for two full semesters for possessing a firearm on the grounds of Eastern Greenbrier Junior High School. The majority held that

> the State, by refusing to provide any form of alternative education, had failed to tailor narrowly the measures needed to provide a safe and secure school environment. Therefore, we find that the 'thorough and efficient' clause of Article XII, Section 1 of the West Virginia Constitution, requires the creation of an alternative program for pupils suspended or expelled from their regular educational program for a continuous period of one year for the sole reason of possessing a firearm or other deadly weapon at an educational facility.

Syl. pt. 4, in relevant part, *Phillip Leon M., supra.* The premise of the majority's holding is that the State may have a compelling State interest in removing a student who brings a firearm or other deadly weapon onto school property from a "regular" educational facility, but the State may never have a compelling State interest in temporarily removing such a student from all state provided educational experiences. I cannot agree with this premise.

The majority virtually nullifies this Court's holding in *Keith D. v. Ball,* 177 W.Va. 93, 350 S.E.2d 720 (1986). In *Keith D.* this Court upheld the school board's decision to suspend four students for a year for making false bomb threats after concluding that "[t]he

students in this case have temporarily forfeited their right to education." *Id.* at 95, 350 S.E.2d at 723 (footnote omitted). Though *Keith D.* did not expressly hold that an alternative education need not be provided to students who are expelled from school for a year, it nevertheless concluded that

> [a]n individual does not have the right to exercise his fundamental constitutional rights at all times, under all circumstances, and by all methods. An exercise of rights in such a fashion that it deprives others of their lawful rights may result in a forfeiture of those rights. See Barker v. Hardway, 283 F.Supp. 228, 238 (S.D.W.Va.), aff'd per curiam, 399 F.2d 638 (4th Cir.1968), cert. denied, 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969).[2]

*Id.* at 95, 350 S.E.2d at 722 (emphasis and footnote added). I believe now as I did when *Keith D.* was decided, that a right to an education may be denied in some circumstances. This is particularly true when the lives of others are threatened by the dangerous actions of a student.

Though the majority states that "a safe and secure school environment is of paramount importance[,]" it fails to acknowledge the obvious fact that the lives of teachers and other school personnel who are required to work with the expelled student in an alternative setting will be threatened no less. *Phillip Leon M.,* op. at 405 n. 9, 484 S.E.2d at 914 n. 9. The safety of these individuals cannot be ignored or overlooked. It goes without saying that a student with a gun or other dangerous weapon threatens not only other students, but those teachers and school personnel who are required to work virtually side by side with the expelled student.

**2.** In *Barker, supra,* the United States District Court was confronted with determining whether Bluefield State College's suspension of students for engaging in a non-peaceful and violent protest demonstration on the college's campus violated, *inter alia,* their First Amendment right of free speech. The court in concluding that the students' actions "exceeded this constitutional privilege and forfeited its protection ..." stated: "I have failed to find any case saying that the right of free speech and peaceful assembly carries with it the right to verbally abuse another or

to threaten him with physical harm or to deprive him of his right to enjoy his lawful pursuits." *Id.* at 238. *See generally* 16A Am.Jur.2d *Constitutional Law* § 446 (1979) ("Every constitutional right or privilege must be enjoyed with such limitations as are necessary to make its enjoyment by each consistent with a like enjoyment by all, since the right of all is superior to the right of any one." (footnote omitted)). Likewise, the fundamental right to an education does not carry with it the right to endanger the lives of others.

Clearly, whether a student should be provided an alternative education depends on the unique circumstances of his or her case. Thus, when determining whether the State has narrowly tailored the measures warranted to provide a safe and secure school environment, a court must look at all of the circumstances present in each particular case. I, therefore, cannot accept the majority's conclusion that in *every case* in which a student is expelled from school for one year for possessing a firearm or other deadly weapon on school property, the State must provide an alternative education.[3] While in some circumstances, the State should provide an alternative education to a student who has been expelled for possessing a firearm or other dangerous weapon on school property, there should be a point when a student's actions are so egregious, that in order to

protect teachers and other school personnel, the State may determine that there is a compelling State interest not to provide an alternative education to that particular expelled student.[4] Accordingly, based on the above discussion, I respectfully concur, in part, and dissent, in part.

I am authorized to state that Justice Workman joins in this separate opinion.

---

**3.** Although this dissent focuses only on whether an alternative education must be provided when a student is expelled, another important issue is how school authorities determine when expulsion is the best solution to a problem. For instance, it is questionable as to whether it would be appropriate to expel a student who carried a knife in his or her lunch box for the purpose of cutting chicken. Although in some circumstances a knife may be used as a deadly weapon, it defies common sense to find that a knife being used to cut one's lunch is a deadly weapon. Thus, the provision mandating that students possessing a firearm or other deadly weapon be expelled for a minimum of twelve consecutive months in *W. Va.Code*, 18A–5–1a [1995] raises constitutional concerns. However, as noted by the majority, this case arose prior to the enactment of *W. Va.Code*, 18A–5–1a [1995]. *See Phillip Leon M.*, op. at 402 n. 4, 484 S.E.2d at 911 n. 4. Though *W. Va.Code*, 18A–5–1a [1995], is not at issue in the case at bar, it is at issue in *Cathe A. Guardian of C.E.A. v. Doddridge Board of Education*, No. 23350, which is scheduled to be argued before this Court on February 25, 1997.

**4.** In *Doe v. Superintendent of Schools of Worcester*, 421 Mass. 117, 653 N.E.2d 1088 (1995) a student was expelled from school for possessing a lipstick case containing a knife blade. The student had a history of problems including a history of three suicide attempts. The majority of the Supreme Judicial Court of Massachusetts held, in *Doe*, that the school had a rational basis for expelling the student after concluding that a right to an education was not a fundamental right. Of interest to me, however, is the dissenting opinion of Chief Justice Liacos who not only concluded that a right to education is a fundamental right, but also concluded that expulsion may be the least restrictive alternative when a

student's unlawful conduct could be dangerous to others:

> [When determining whether the actions of the State were the least restrictive that could be taken or were narrowly tailored, there are many factors which should be considered.] In other contexts, the court looked to various factors [such] as the preservation of life, the protection of innocent persons, the prevention of suicide, and the maintenance of orderly administration.... In applying these analytical factors here, especially the protection of students and staff, and the prevention of suicide (given the plaintiff's unfortunate history), it is possible to conclude that because the school has a measure of custody over each student, statutory expulsion is the least restrictive alternative. Transfer to another school, tutoring, or daily searches would not necessarily have eliminated safety concerns. We do not know if home education would have been practical. A short suspension might not have served the compelling State interest. In addition, it is conceivable that a student could use possession of an item such as that at issue to manipulate the administration into providing an alternative educational setting. Deterrence could be impaired. In this context, expulsion could be adequately justified as the least restrictive alternative.

*Id.* 653 N.E.2d at 1103 (Liacos, Chief J., dissenting) (citations omitted).

Moreover, although the majority did not focus on this point, I think there is a compelling State interest in maintaining discipline over the students. As suggested in *Doe, supra*, above, providing an alternative education to some students who bring firearms or other deadly weapons onto school property may not effectively deter that student or other students from engaging in similar dangerous conduct in the future.