# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

June 19, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: J.P.**

**No. 14-0114** (Greenbrier County 13-JA-34)

## MEMORANDUM DECISION

Petitioner Father, by counsel Kristopher Faerber, appeals the Circuit Court of Greenbrier County's January 13, 2014, order terminating his parental rights to J.P. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel William Jones, filed its response in support of the circuit court's order. The guardian ad litem ("GAL"), Lieselotte Sills, filed a response on behalf of the child that also supported the circuit court's order. On appeal, Petitioner Father alleges that the circuit court erred in adjudicating him as an abusive parent and in denying his right to a jury trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 10, 2011, the DHHR placed J.P. with Petitioner Father after the child's mother's parental rights were involuntarily terminated.[1] A few weeks later, the DHHR removed J.P. from Petitioner Father's home.[2] The DHHR returned J.P. to Petitioner Father's care on October 7, 2011. However, several months later, the DHHR removed J.P. from Petitioner Father's care. CPS worker Crystal Stock testified that the DHHR removed the child from Petitioner Father because he allegedly followed J.P. to the bus stop and "pushed [J.P.] to the ground, got on top of him and held him down." In July of 2012, the DHHR again returned J.P. to the care of Petitioner Father. In July of 2013, the DHHR again removed J.P. from Petitioner Father's care following an incident wherein Petitioner Father allegedly attempted to force J.P. to

---

[1] As part of this prior proceeding, the DHHR provided Petitioner Father with multiple services designed to reunify Petitioner Father with J.P., such as parenting classes, supervised visitation, drug screening, counseling services, and a special medical card.

[2] Child Protective Services ("CPS") worker Crystal Stock testified that Petitioner Father mentally abused J.P. by embarrassing him in front of his friends at school.

1

clean the dishes by threatening to urinate on his pillow.[3] As a result of the tumultuous history stated above, and Petitioner Father's disciplinary methods, the DHHR filed an abuse and neglect petition.[4]

Prior to the adjudicatory hearing, Petitioner Father filed a motion for a jury trial, which the circuit court denied. During the adjudicatory hearing, the circuit court heard testimony regarding Petitioner Father's disciplinary techniques. The circuit court continued the adjudicatory hearing until September 24, 2013, during which it heard additional testimony. J.P. testified that Petitioner Father tried to drop him off at a children's shelter and that, on one occasion Petitioner Father threw a bag of J.P.'s personal items out of the window while driving on the interstate. Finally, the circuit court heard testimony that Petitioner Father would place a chain and padlock around the freezer to prevent J.P. from eating his stepsister's food. After considering all of the evidence, the circuit court ruled that Petitioner Father was an abusive parent based on a "pattern of behaviors, including verbal and physical aggression, as well as dominant and oppressive behaviors, which have seriously interfered with the child's cognitive, emotional, and social development." By order entered on January 13, 2014, the circuit court terminated Petitioner Father's parental rights. The circuit court held that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future because Petitioner Father failed to benefit from over two years of services. It is from this order that Petitioner Father now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

---

[3]Petitioner Father testified that he was aware that J.P.'s pillow was one of the only things he still had from his mother. Petitioner Father also testified that he did not urinate on J.P.'s pillow.

[4]CPS worker Stock testified that Petitioner Father received services beginning in June of 2011. The DHHR terminated Petitioner Father's services in July of 2013.

On appeal, Petitioner Father raises two assignments of error. First, Petitioner Father argues that the circuit court violated his constitutional right to a jury trial in this abuse and neglect matter. Petitioner Father submits that because he has a significant liberty interest[5] in the care, custody, and control of his child, Article III, Section 10, of the West Virginia Constitution[6] guarantees him a jury trial in this abuse and neglect proceeding. Further, Petitioner Father submits that a jury trial would further promote the child's best interest[7] by allowing decisions to be made by rational and unbiased members of the public.

We have previously held that "[a] circuit court's interpretation of the West Virginia Constitution is reviewed *de novo*." Syl. Pt. 1, *Leon v. Greenbrier Cnty. Bd. Of Educ.*, 199 W.Va. 400, 484 S.E.2d 909 (1996). Upon our review, the Court finds no error in the circuit court's decision to deny Petitioner Father a jury trial in this abuse and neglect matter. Findings of abuse and neglect and termination of parental, custodial, and guardianship rights must be made in compliance within the provisions of West Virginia Code § 49-6-1 through § 49-6-12 and the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings ("the Rules"). A plain reading of West Virginia Code § 49-6-2(c) and the Rules, reveals that the Legislature did not intend to allow a jury trial in an abuse and neglect proceeding. To the contrary, the Legislature included clear language in West Virginia Code § 49-6-2(c) providing that "*the court shall* make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . ." (Emphasis added). Further, the Rules state that "[a]t the conclusion of the adjudicatory hearing, *the court shall* make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-6-2(c)." W. Va. R. Proc. for Child Abuse and Neglect Proceedings 27. (Emphasis added). Clearly, the use of the phrase "the court" suggests that the circuit court is to be the trier of fact in abuse and neglect proceedings.

Moreover, we have previously held that

[e]ven though the concepts of "property" and "liberty" found in Article III, Section 10 of our State Constitution . . . have been given an expanded meaning, resulting in an extension of procedural due process protection, this Court has not held that Article III, Section 10 requires the right to a jury trial in every instance where a procedural due process right must be accorded.

*Markey v. Wachtel*, 164 W.Va. 45, 52, 264 S.E.2d 437, 442 (1979).

---

[5]In *Troxel v. Granville*, 530 U.S. 57, 65 (2000), the United States Supreme Court stated that "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."

[6]"No person shall be deprived of life, liberty, or property, without due process of law, and judgment of his peers." W.Va. Const. art. III, § 10.

[7]"[T]he best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989).

Further, this Court has also held that

> West Virginia Code, Chapter 49, Article 6, Section 2, as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing.

Syl. Pt. 2, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). Pursuant to West Virginia Code § 49-6-2(c) a "party or parties having custodial or other parental rights or responsibilities . . . shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." In this case, Petitioner Father was represented by counsel, afforded a meaningful opportunity to be heard, and allowed to fully participate in the proceedings below. "We have never considered that the framers of Article III, Section 10 of the West Virginia Constitution intended to extend the right of jury trial to all cases." *Markey*, 164 W.Va. at 50, 264 S.E.2d at 441. For these reasons, we find that the circuit court did not err in denying Petitioner Father a jury trial in this abuse and neglect proceeding.

Finally, the Court finds no error in the circuit court's decision adjudicating Petitioner Father as an abusive parent. Petitioner Father argues that the circuit court erred in finding that his disciplinary methods constituted abusive behavior. We have previously held that

> "W.Va.Code [§] 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 3, *In re Randy H.,* 220 W.Va. 122, 640 S.E.2d 185 (2006).

We find no error with regard to the circuit court's findings of abuse. The circuit court heard testimony from multiple witnesses, including Petitioner Father. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, we note that the circuit court was in the best position to assess witness credibility, and we find no error in the findings of abuse of the child at issue.

For the foregoing reasons, we find no error in the decision of the circuit court and the January 13, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 19, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5