IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

**FILED**
**May 2, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-476

JASON MOORHEAD,
Petitioner,

v.

WEST VIRGINIA ARMY NATIONAL GUARD and WEST VIRGINIA
MOUNTAINEER CHALLENGE ACADEMY,
Respondents.

Appeal from the Intermediate Court of Appeals of West Virginia
No. 22-ICA-58
Civil Action No. 18-C-71

AFFIRMED

Submitted:  March 12, 2025
Filed: May 2, 2025

Stephen P. New, Esq.
Stephen New & Associates
Beckley, West Virginia
Counsel for Petitioner

Christopher C. Ross, Esq.
Omar D. Ahmad, Esq.
Pullin, Fowler, Flanagan, Brown & Poe,
PLLC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      On appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a circuit court's entry of summary judgment.

2.      "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition." Syllabus Point 1, *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996).

3.      "If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby." Syllabus Point 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

4.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must

i

determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus Point 11, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

5. "For purposes of qualified immunity, internal agency policies, procedures, manuals, guidelines, or similar documents that have not been legislatively approved are not, and cannot be used to create clearly established statutory rights or law of which a reasonable person would have known." Syllabus Point 4, *West Virginia Department of Human Services v. David B., next friend of J.B.*, 251 W. Va. 217, 911 S.E.2d 884 (2024).

WALKER, Justice:

Petitioner Jason Moorhead applied to attend Mountaineer Challenge Academy as an educational alternative to his public high school. During his acclimation period at MCA to test his suitability as a candidate, he was injured after exiting his bunk in an unapproved manner. He was seen by medical personnel and ultimately cleared by those providers to continue participation in the program, but he was discharged from the program for noncompliance. Petitioner sued MCA and the West Virginia Army National Guard alleging, among other things, that they caused his injuries by failing to enforce their mandatory policies in supervising him. Respondents filed a motion to dismiss and later a motion for summary judgment on the basis of qualified immunity, which was granted by the circuit court and affirmed by the Intermediate Court of Appeals. For the reasons discussed below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Petitioner was sixteen years old and applied to MCA, operated by the West Virginia Army National Guard "to meet[] the educational needs of at-risk youth throughout the state."[1]    MCA is a voluntary, 22-week "special alternative education

_____

[1] W. Va. Code § 15-1B-24(b) (2019).

1

program" approved under West Virginia Code § 18-2-6 (2019).[2] As part of the application process, Petitioner's mother signed a general power of attorney, health care power of attorney, and voluntary appointment of guardian form. Petitioner's application was accepted for an "acclimation period" of two weeks where candidates are evaluated for suitability as cadets. On July 12, 2015, the first day of Petitioner's acclimation period, the cadet candidates were given a safety briefing and introduced to rules, including instruction on the approved method of dismounting from the top bunks in the barracks. On July 17, 2015,[3] Petitioner dismounted his bunk in an unapproved manner and felt a pinch in his knee. Based on deposition testimony of Petitioner's expert, there was a video showing Petitioner and other cadet candidates dismounting the bunks improperly, but not being corrected by any member of the supervising "cadre."[4]

The following day, Petitioner reported to a member of the cadre that he was experiencing knee pain and was taken to see a nurse, where he was given crutches. On

---

[2] This code provision was last amended in 2019. Though the parties do not dispute the application of the 2019 version, we note that it has not meaningfully changed for purposes of the issues before us in the previous amendments in 2013 and 2016.

[3] Petitioner sought to amend his complaint to clarify, among other things, the timeline as alleged in the complaint that differed in some respects from the deposition testimony and evidence, but ultimately withdrew that motion. We acknowledge the differences between the dates in the complaint and those argued in briefing drawn from deposition testimony, but the circuit court found that the parties generally agreed to the timeline outlined here so we use those dates.

[4] The term cadre is used by the parties and in the order and decision on appeal as referring to the supervising officers in charge of the cadet candidates during the acclimation period, so we utilize it as well.

July 20, 2015, Petitioner was again evaluated by a nurse practitioner who placed him on lower-body duty restrictions for three days. On July 22, 2015, Petitioner was re-evaluated by a physician who concluded that he had non-specific complaints of knee pain, and he was returned to full duty. That day, MCA also discharged him from the program. Petitioner's acclimation reports, all written after he injured his knee on July 17, 2015, were negative and noted that he had little insight when counseled, was reluctant to participate, made excuses, and was unwilling to perform despite being able to do so. After discharge from the program, petitioner graduated from high school in 2017.

In 2018, Petitioner sued Respondents based on his leg injuries and dismissal from the program. Specifically, Petitioner alleged he had inadequate time to exit his bunk and so exited in an unapproved manner that resulted in injury. In later filings and argument, he contended that he was injured when he exited his top bunk bed because of the lack of enforcement of MCA's own protocol and that he was unjustly dismissed from the program based on those injuries. Respondents moved to dismiss and for summary judgment on grounds of qualified immunity. Petitioner opposed those motions and filed a motion for partial summary judgment on the issue of proximate causation. The circuit court granted summary judgment in favor of Respondents based on qualified immunity, finding that Petitioner's claims involved discretionary functions that were not in violation of clearly established statutory or constitutional rights or laws that a reasonable person would have known. In addition, the circuit court found that the agreed facts did not rise to the level of being fraudulent, malicious, or oppressive and instead involved simple negligence.

3

On appeal to the ICA, Petitioner asserted six assignments of error, generally challenging the circuit court's ruling on qualified immunity, arguing that MCA's conduct did not involve a discretionary duty, and that MCA violated a clearly established right or law, or, alternatively, that there was an issue of fact surrounding whether MCA acted fraudulently, maliciously, or oppressively.

The ICA affirmed the circuit court's summary judgment order.[5] In analyzing the application of qualified immunity, in its signed opinion the ICA concluded that MCA's act or failure to act through the cadre's failure to correct the way candidates exited the top bunk fell within the supervision category of discretionary actions. The ICA concluded that there was no violation of Petitioner's right to an education under the West Virginia Constitution, or the statutory right to supervision by teachers because MCA was not a part of the public school system. As MCA took Petitioner to three medical providers, the ICA found that MCA's duty to him under the health care power of attorney signed by Petitioner's mother was fulfilled. The ICA also concluded that there was no fraudulent, malicious, or oppressive action by MCA because it relied on medical advice (and so had no reason to believe that Petitioner was physically unable to participate in activities), and because there was no evidence that MCA disregarded medical recommendations or delayed medical evaluations. Petitioner appeals that decision.

---

[5] 248 W. Va. 592, 889 S.E.2d 314 (Ct. App. 2023).

## II.  STANDARD OF REVIEW

Because this Court has not yet had occasion to set a standard for review of an order granting summary judgment appealed from a decision of the Intermediate Court of Appeals,[6] we pause to articulate the scope of our review.

The entry of summary judgment is reviewed de novo under Syllabus Point 1 of *Painter v. Peavy*[7] as a derivative of the standards expressed in Rule 56 of the West Virginia Rules of Civil Procedure.[8]  Deference is owed to a trial court sitting in judgment of facts where its observations are of much greater weight and value than an appellate court's cold review.[9]  But entry of summary judgment may only be appropriate in the *absence* of disputed issues of material fact such that the movant is entitled to judgment as

---

[6] *See* West Virginia Appellate Reorganization Act, W. Va. Code § 51-11-3(b).

[7] 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

[8] "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  W. Va. R. Civ. P. 56(a).

[9] *See, e.g.*, *In re H.D.*, 248 W. Va. 239, 244-45, 888 S.E.2d 419, 424-25 (2021) ("'Critical' yet 'unreviewable intangibles[,]' . . . may escape our notice 'from a vista of a cold appellate record[.]'") (internal citations omitted); *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."); *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995) ("Only rarely and in extraordinary circumstances will we, from the vista of a cold appellate record, reverse a circuit court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.").

5

a matter of law.[10]  Questions of law are reviewed de novo,[11] and so the entry of summary judgment is reviewed de novo.  We see no cause to depart from the de novo standard.  We therefore hold that on appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a circuit court's entry of summary judgment.

Specific to this context, we have explained that immunity—as no mere defense to liability, but a protection from litigation in the first instance[12]—is peculiarly amenable to summary disposition:

> [t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.[13]

We now turn to the parties' arguments.

---

[10]  *See supra* n.8.

[11] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

[12] *Hutchison v. Cty. of Huntington*, 198 W. Va. 139, 148, 479 S.E.2d 649, 658 (1996) ("Immunities under West Virginia law are more than a defense to suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all.  The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case.").

[13] *Id.* at Syl. Pt. 1.

6

On appeal, Petitioner asserts that qualified immunity should not shield MCA from liability here, attacking the ICA's findings to that end on several fronts. We have explained that qualified immunity "flows not from constitutional, sovereign immunity, but is a judge-made doctrine intended to 'allow officials to do their jobs and to exercise judgment, wisdom, and sense without worry of being sued.'"[14]  With that foundation in mind, Petitioner's claims must be properly framed to guide the appropriate qualified immunity analysis. Petitioner alleges various failures of MCA staff caused the injury he sustained to his legs "after being required to jump from the top bunk when exiting his bed, because he was not given adequate time to exit the bed by another means." After the injury, according to Petitioner's brief, he informed a member of the cadre that he had injured himself and he was taken for evaluation by medical personnel.[15]  He was placed on restricted duty for three days until he was reevaluated by a physician. He had "non-specific complaints of knee pain" and the physician returned him to full duty. Petitioner was written up numerous times between July 19 and July 22, 2015, based on, among other things, reluctance to participate and unwillingness to perform. He was discharged from the program on July 22 along with other candidates who were deemed unsuitable for the

---

[14] *W. Va. Div. of Corr. & Rehab. v. Robbins*, 248 W. Va. 515, 524, 889 S.E.2d 88, 97 (2023) (quoting *W. Va. Bd. of Ed. v. Marple*, 236 W. Va. 654, 661, 783 S.E.2d 75, 82 (2015)).

[15] Petitioner was evaluated by medical personnel at Preston Memorial Hospital, not medical personnel internal to MCA.

program.

Petitioner's brief to this Court restates his claim against Respondents as based on "MCA's failure to enforce its own mandatory guidelines regarding how students are to exit their beds." He maintains that such failure "proximately caused the exacerbation of Petitioner's pre-existing leg injuries, which ultimately led to him being unfairly dismissed from the MCA because of a purported lack of participation." Petitioner does not name any individual actor as a party and does not allege any direct negligence on the part of Respondents; the claims are based solely on a theory of vicarious liability for the cadre's inaction – specifically, the failure to require Petitioner to exit his bunk in the approved manner to avoid injury.

With that factual background to the claims against Respondents, we turn to the qualified immunity analysis and first clarify that Petitioner's claims sound in discretionary functions generally entitled to qualified immunity. We then examine the sources of clearly established rights or laws Respondents are alleged to have violated as well as Petitioner's allegations that Respondents' conduct was malicious and conclude that Petitioner's arguments in those respects do not strip Respondents of qualified immunity for the underlying alleged conduct.

Petitioner's primary argument on appeal to this Court is that Respondents were not entitled to qualified immunity because the conduct that gave rise to the cause of

8

action was a ministerial duty, not an exercise of discretion. In its decision affirming the circuit court's summary judgment order, the ICA appropriately noted that this Court has criticized the "discretionary" versus "ministerial" nomenclature as "highly arbitrary and difficult to apply."[16] In *Chase Securities*, we explained that the distinction between discretionary and ministerial functions was more fairly subsumed into the portion of the qualified immunity analysis that strips immunity for actors who violate clearly established rights or law of which a reasonable person would have known because ministerial functions, definitionally, are acts "so well prescribed, certain, and imperative that nothing is left to the public official's discretion."[17] Still, we reserve qualified immunity for "discretionary acts" and maintain that threshold criteria in our analysis of its application:

> A public official or State agency may claim to be qualifiedly immune from suit only when "the acts or omissions which give rise to the suit . . . involve . . . discretionary governmental functions." If they do, then the public official or State agency is entitled to qualified immunity *unless* "the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights

---

[16] *State v. Chase Securities, Inc.*, 188 W. Va. 356, 364, 424 S.E.2d 591, 599 (1992).

[17] *Id. See also W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.,* 234 W. Va. 492, 508 n.21, 766 S.E.2d 751, 767 n.21 (2014) ("[I]n [*W. Va. Dep't of Health and Human Res. v.*] *Payne,* we recognized and agreed with the observation of the *Chase Securities* Court that application of the 'clearly established law' principle 'will ordinarily have the same effect as the invocation of the "ministerial acts" principle.' 231 W. Va. at 574 n.26, 746 S.E.2d at 565 n.26.") (citation omitted)). Petitioner's brief cites authority from other states that continues to dance the ministerial/discretionary line. We reject that authority, having already addressed its difficulties and incorporated the principle into our analysis by other means.

9

or laws of which a reasonable person would have known . . . ."[18]

We view Petitioner's argument in this respect not as an exhumation of the ministerial/discretionary distinction[19] but as the simple argument that, according to Petitioner, the cadre has no discretion in how to enforce its policies relative to instructing and correcting cadets on safely exiting a bunk. We agree that Petitioner's claims are inherently grounded in supervision of the program participants and that oversight necessarily involves an exercise of discretion. The cadre exercises its discretion in the manner and enforcement of its policies and ascertains the circumstances under which correction is necessary under the safety policies, so we agree with the conclusion of the circuit court and the ICA that the allegations against the cadre, borne by Respondents as conduct within the scope of employment,[20] sound in discretionary functions.

We have held that:

---

[18] *Robbins*, 248 W. Va. at 524, 889 S.E.2d at 97 (emphasis in original) (footnote omitted).

[19] To the extent Petitioner's argument *is* intended to claim that the cadre's failure to the enforce the policy was the failure to perform a ministerial duty tantamount to violation of a clearly established right, we reject that argument consistent with our recent holding in *West Virginia Department of Human Services v. David B., next friend of J.B.*, 251 W. Va. 217, 911 S.E.2d 884 (2024), discussed *infra*.

[20] As Respondents do not argue that the actions of the cadre were committed outside the scope of employment, we decline to inject the complexities of that analysis into this decision. *See Robbins*, 248 W. Va. at 529, 889 S.E.2d at 102 (examining role of scope of employment in qualified immunity and coterminous liability).

10

If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.[21]

Consistent with that case law, we find that Respondents' actions were discretionary and within the purview of qualified immunity application. "However, once the 'judgments, decisions, and actions' of a governmental official are determined to be discretionary, the analysis does not end[:]"[22]

To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.[23]

We recently explained that the first workaround to application of qualified immunity – violation of a clearly established right – is derived from the federal standards, while the latter—fraudulent, malicious, or oppressive conduct—is derived from state

---

[21] Syl. Pt. 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

[22] *Payne*, 231 W. Va. at 572, 746 S.E.2d at 563 (quoting Syl. Pt. 3, *Clark*).

[23] Syl. Pt. 11, *A.B.*

11

immunities law.[24]  Because Petitioner contends that both should apply to preclude application of qualified immunity in this case, we take each in turn.

### A. *Clearly Established Rights or Laws*

Petitioner alleges that three different clearly established laws or rights were violated by the cadre that should strip Respondents of qualified immunity: (1) MCA's safety policies; (2) the right to an education under Article 12, Section 1 of the West Virginia Constitution; and (3) duties imposed by West Virginia Code § 18A-5-1(a) (2008)[25] to act in loco parentis, and similar duties imposed by execution of guardianship paperwork and general and healthcare powers of attorney.  In examining Petitioner's argument with respect to the West Virginia Constitution, duties purportedly imposed by West Virginia Code § 18A-5-1(a) on MCA to act in loco parentis, and similar duties imposed by execution of guardianship paperwork and general and healthcare powers of attorney, we observe that all stem from a duty to provide a safe and secure school environment (and the alleged failure to provide it) and so consider them together.

To the first argument that MCA violated its own policies by not enforcing them and thus violated a clearly established right or law, this Court recently held at Syllabus

---

[24] *Robbins*, 248 W. Va. at 524, 889 S.E.2d at 97.

[25] "The teacher shall stand in the place of the parent(s), guardian(s) or custodian(s) in exercising authority over the school and has control of all students enrolled in the school from the time they reach the school until they have returned to their respective homes[.]"

12

Point 4 of *West Virginia Department of Human Services v. David B., next friend of J.B.*[26] that "[f]or purposes of qualified immunity, internal agency policies, procedures, manuals, guidelines, or similar documents that have not been legislatively approved are not, and cannot be used to create clearly established statutory rights or law of which a reasonable person would have known." Because the MCA policies have not been legislatively approved, they do not create clearly established statutory rights or law of which a reasonable person would have known sufficient to strip Respondents of qualified immunity for their violation.

Next, Petitioner claims that under the West Virginia Constitution, MCA has a duty to act in loco parentis, and that MCA violated his constitutional right to an education,[27] which education includes a safe and secure environment.[28] Similarly, Petitioner claims that under West Virginia Code § 18A-5-1(a), MCA had a duty as a school

---

[26] 251 W. Va. 217, 911 S.E.2d 884.

[27] To the extent Petitioner alleges his discharge from the program during his acclimation period was a consequence of his leg injury (purportedly caused by the cadre's failure to correct his unapproved method of exiting his bunk), those arguments are addressed in the portion of the qualified immunity analysis aimed at allegations of fraudulent, malicious, or oppressive conduct.

[28] *Philip Leon M. v. Greenbrier Cnty. Bd. of Educ.*, 199 W. Va. 400, 405, 484 S.E.2d 909, 914 (1996) ("Implicit within the constitutional guarantee of a 'thorough and efficient system of free schools' is the need for a safe and secure school environment.").

to act in loco parentis.[29]

Turning to the sources of clearly established rights or laws, we find none that strip Respondents of qualified immunity on these facts. Article 12, Section 1 of the West Virginia Constitution provides that "[t]he legislature shall provide, by general law, for a thorough and efficient system of free schools" and contains an implicit duty to provide a safe learning environment. Petitioner further alleges that under West Virginia Code § 18A-5-1(a) he was owed certain in loco parentis duties applicable to public schools and that Respondents violated that provision by failing to supervise him, keep him safe, and inform his parent of his injury. But Petitioner fails to establish that MCA owes him such a duty or

---

[29] Insertion of arguments related to the duty to act in loco parentis unnecessarily convolutes the narrow analysis before us because it appears to be a square-peg-round-role invocation of the special relationship doctrine. Petitioner argues that the doctrine of in loco parentis applies to the relationship between himself and MCA, whether by establishment of a student-teacher relationship, or by the documents his parent signed. Effectively, he argues that he was owed a heightened duty of care as though, in and of itself, it is sufficient to overcome qualified immunity. But the special relationship doctrine, as we have explained, is applied in a specific set of circumstances to *establish* a duty owed to a certain individual that would not be owed to the general public: "[t]he 'special relationship' or 'special duty' doctrine is an exception to the liability defense known as the public duty doctrine; it is neither an immunity concept nor a stand-alone basis of liability." Syl. Pt. 14, *A.B. See also Payne*, 231 W. Va. at 568 n.10, 746 S.E.2d at 559 n.10 (clarifying distinctions between qualified immunity, public duty doctrine, and special relationship exception).

Respondents have not invoked the public duty doctrine to prompt application of a special relationship analysis to establish a duty owed, and we find no correlating violation alleged beyond the statutory and constitutional provisions to overcome qualified immunity already addressed in this opinion. For those reasons and because in loco parentis status is not a stand-alone basis of liability, we find no need to address Petitioner's assignments of error relative to a general duty to act in loco parentis derived from either a public school classification or documents signed by Petitioner's parent.

14

that its conduct infringed on his rights under either the Constitution or West Virginia Code § 18A-5-1(a). Petitioner assumes that because he claims violation of a constitutional right, Respondents may not rightfully claim qualified immunity, or, alternatively, that pointing to a statutory duty is, of itself, sufficient. But qualified immunity is not so fickle as to abandon state actors upon mere mention of a constitutional provision or statute.

MCA is a cooperative quasi-military program created by agreement of the United States Secretary of Defense and the Governor of West Virginia as outlined in West Virginia Code § 15-1B-24(a) separate and apart from the public school system. MCA was approved by the Legislature as a "special alternative education program" to meet the needs of at-risk students and simultaneously meet *its* constitutional duty to provide an education. MCA does not fall under the purview of the West Virginia Board of Education and is operated by the Adjutant General.[30] So while it is recognized as an alternative education program in Chapter 18 related to education, MCA operates within an entirely different chapter of the West Virginia Code, and the references to MCA in Chapter 18 explicitly provide that "[n]othing in this section or the rules promulgated under this section compels [MCA] to be operated as a special alternative education program or to be subject to any other laws governing the public schools except by its consent."[31] So, the provisions of Chapter 18A or any other law specific to public schools may not be imposed on MCA

---

[30] W. Va. Code § 18-2-6(f) (2019).

[31] W. Va. Code § 18-2-6(h)

outside of the specific, limited statutory applications prescribed by the Legislature or consented to by MCA.

Constitutionally speaking, Petitioner has a right to a free education, but he does not have a *right* to attend MCA, specifically.[32] And factually, we do not see that Petitioner's right to an education was infringed when he returned to public school and graduated. We thus agree with the ICA's conclusion that "[t]he legislature has made it clear that the programs offered by [MCA] sit separate and apart from West Virginia's public school system and are not subject to the same constitutional protections as its public school counterpart." For similar reasons, we also agree that any duty to supervise found in West Virginia Code § 18A-5-1(a) is not applicable to Respondents.

More to the point, Petitioner finds duties owed in abundance from various sources but does not articulate a *violation* of those duties beyond the valid exercise of the cadre's discretion in the enforcement of its own policies and in its reliance on medical advice. Even if MCA *could* be fairly characterized as part of the public school system subject to creation of a duty on the part of MCA under the West Virginia Constitution to provide a safe and secure environment, Petitioner's claims are barred by qualified immunity because Petitioner cannot show that these general duties were violated by the

---

[32] *See Cathe A. v. Doddridge Cnty Bd. of Educ.*, 200 W. Va. 521, 528, 490 S.E.2d 340, 347 (1997) ("'An individual does not have the right to exercise his fundamental constitutional rights at all times, under all circumstances, and by all methods.'") (quoting *Keith D. v. Ball*, 177 W. Va. 93, 95, 350 S.E.2d 720, 722-23 (1986)).

16

conduct alleged. In examining violation of clearly established rights, this Court has explained that specificity in the complained-of conduct is a necessary component:

> To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a "particularized showing" that a "reasonable official would understand that what he is doing violated that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent."[33]

Petitioner argues that he had a right to an education and to a safe and secure learning environment, but the entire basis for disruption of his safe and secure environment was the cadre's failure to correct his unapproved method of getting out of bed – a method Petitioner was directly instructed to follow to avoid injury. Petitioner fails to specify anything beyond the cadre's general failure to correct him on the specific occasion that he was injured in the day-to-day supervision of the candidates; there is no indication that it would have been apparent to any member of the cadre that they were violating his constitutional right to an education or depriving him of a safe environment.

We have already established that the policies themselves are not clearly established rights or laws and that the cadre exercises its discretion in determining the manner of enforcing its policies and in determining circumstances requiring correction under those policies in its execution of any purported duty to provide a safe and secure

---

[33] *Crouch v. Gillispie*, 240 W. Va. 229, 235, 809 S.E.2d 699, 705 (2018) (quoting *Hutchison*, 198 W. Va. at 149 n.11, 479 S.E.2d at 659 n.11).

environment. Exercise of that discretion in the performance of a duty owed is precisely the conduct that qualified immunity seeks to protect from litigation:

> [t]he purpose of such official immunity is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation. The provision of immunity rests on the view that the threat of liability will make [] officials unduly timid in carrying out their official duties[.][34]

This Court has found that qualified immunity applies where "the method and manner in which [a] duty is carried out involves an exercise of discretion."[35] And while Petitioner disagrees with the way the cadre exercised that discretion, "[a] public officer is entitled to qualified immunity for discretionary acts, even if committed negligently."[36] We do not see that Petitioner's allegations or evidence bear out a violation of any clearly established right of which a reasonable person would have known and fail to see his claim as anything more than a simple negligence claim based on the cadre's failure to correct him on a method he had previously been instructed to follow and MCA's deference to medical advice – advice Petitioner does not criticize.

### B. Fraudulent, Malicious, or Oppressive Conduct

---

[34]*Payne*, 231 W. Va. at 577, 746 S.E.2d at 568 (citation omitted).

[35] *W. Va. Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009 at *6 (W. Va. May 17, 2017) (memorandum decision). *See also Crouch*, 240 W. Va. at 236-37, 809 S.E.2d at 706-07.

[36] *Maston v. Wagner*, 236 W. Va. 488, 500, 781 S.E.2d 936, 948 (2015).

Finally, Petitioner argues that there were sufficient disputed facts as to whether Respondents acted fraudulently, maliciously, or oppressively to defeat summary judgment and send the matter for jury resolution. We disagree. The crux of Petitioner's argument here is that the timing of his injury and dismissal from the program is sufficient for the jury to infer malice. But even that inference is not supportable by the record. Initially, we note that the acclimation period in total is a mere two weeks, so the timing of Petitioner's dismissal was necessarily close in time to commencement of the program and his injury, regardless of the circumstances surrounding his dismissal. Petitioner was written up nineteen times before he was dismissed and argues that there is an inference that his physical limitations (purportedly caused by the actions of Respondents) were the singular basis for those write ups and his ultimate dismissal. But that assertion too lacks evidentiary support. Petitioner did not depose all members of the cadre who issued him written discipline, and instead relies on inferences the jury might make that their discipline for his nonparticipation were malicious, fraudulent, or oppressive. The record bears out that MCA sent Petitioner for examination by health care providers who placed him first on restricted duty – which MCA accommodated – and then cleared him for full return to duty.

Petitioner is not critical of the medical care he received, so it is difficult to grasp the argument that MCA acted maliciously in evaluating him for suitability for the program when they were relying on medical advice that indicated he was capable of performing his assigned duties and was refusing to do so. Petitioner appears to argue that MCA should have questioned their medical opinions when he does not. Moreover, the

19

record indicates that Petitioner's noncompliance and refusal to participate was not limited to physical requirements, but included refusal to shower, general lack of motivation, nonverbal disrespect, and lack of insight into what the program would require of him. On these facts, we agree with the circuit court and the ICA that no reasonable jury could have concluded that MCA acted fraudulently, maliciously, or oppressively, and affirm the grant of summary judgment on the basis of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, we affirm the decision of the Intermediate Court of Appeals affirming the circuit court's entry of summary judgment in favor of Respondents as modified by this Opinion.

Affirmed.